93  538
98  553
93  538
109 268

FRED EIGHMY v. THE UNION PACIFIC RAILWAY COMPANY, Appellant.

**Railroad Hospital:** NEGLIGENCE.  A railroad company is not liable
1   for the malpractice of surgeons voluntarily furnished by it in cases
    of injuries to employes, if reasonable care be used to obtain competent surgeons.

*Appeal from Pottawattamie District Court.*—HON. A. B.
THORNELL, Judge.

MONDAY, JANUARY 28, 1895.

Action at law to recover for personal injuries sustained by the plaintiff, and alleged to have been caused by the negligence of the defendant.   There was a trial by jury, and a verdict for the plaintiff.   Motions in arrest of judgment, for judgment in favor of the defendant on the first count of the petition, and for a new trial were filed by the defendant and overruled, and it appeals.—*Reversed.*

*Wright & Baldwin* for appellant.

*Jordan & Brockett* and *N. M. Pusey* for appellee.

Robinson, J.—At the time the injuries in question were received by the plaintiff, he was in the employ of the defendant as brakeman on a freight train.   On the eleventh day of April, 1888, the train with which he was employed was moved from the yards in Council Bluffs, over the bridge, to the yards in Omaha.   As the train was made up, the locomotive engine was at the front or west end, the way car or caboose was next to it, and in the rear of that were thirty-four freight cars.   The plaintiff was on the top of the rear car.   Just after the

engine passed over the bridge, the train was stopped, most of it being on the bridge. When the train was started, the two rear cars were detached and left behind by the breaking of a car link, but the train was stopped before it had moved half its length, another link and a pin were procured, the train backed, and the plaintiff, after giving the signal to back slowly, proceeded to make the coupling. While so engaged, his right hand was caught between the bumpers of the cars, and he received the injuries of which he complains. He charges the defendant with negligence which caused the injury, as follows: (1) In not providing the bridge with a floor or other safeguard against the unusual perils of coupling cars upon it; (2) in requiring freight trains to stop on the bridge before entering the switch at the east end of the Omaha yards; (3) in starting the train in question so violently as to separate it from the two rear cars; (4) in the sudden increase by the engineer, without warning, of the speed of the rear car of the train, as it approached the standing cars; (5) in the giving by the head brakeman of the signal to stop, without warning. In the second count of his petition, the plaintiff alleges that by reason of his employment by the defendant, his injuries, and the custom in such cases, it became the duty of the defendant to furnish him the services of a skillful and careful surgeon; that the defendant undertook to perform that duty, but that the surgeon employed for the purpose, after dressing the hand once, refused to treat it further, except to have it examined by an inexperienced and unskillful student; and that by reason of this negligence the hand became stiff, and almost wholly useless. The amount of damages the plaintiff is alleged to have sustained in each count is the sum of one thousand nine hundred and ninety-five dollars, and judgment for that

amount is demanded. The defendant denies all liability on its part, and alleges that negligence of the plaintiff contributed to the injuries for which he seeks to recover. The jury found specially that, if the plaintiff had used a coupling stick or implement of like character for guiding the link, his hand would not have been caught; that he knew, when he went between the cars to make the coupling, that the cars would necessarily be moved a short distance before they would be stopped; that the engineer did not make any movement of the engine, to increase its speed or the speed of the train, after he received the signal to back slowly; that at or near the time the plaintiff stopped near the stationary car, to make the coupling, the engineer was signaled to stop, and did so. The jury returned a general verdict in favor of the plaintiff for the sum of one thousand five hundred dollars.

I. It appears that the defendant has what is called a "medical department" for the treatment of its employes who are injured on its road. Dr. Galbraith was employed by that department, on a salary, to attend to persons so injured. He was the one who amputated some of the fingers, and first dressed the injured hand of the plaintiff, and was assisted by Dr. Gibbs, the alleged student. There is no evidence that Dr. Galbraith was not in all respects competent and skillful, and it is shown affirmatively that Dr. Gibbs was a competent physician. He treated the hand after it was first operated upon and dressed. There was evidence from which the jury might have found that the treatment was improper and negligent, and that it was injurious to the plaintiff.

The next question to be determined is, to what extent is the defendant liable for the negligence of its physicians and surgeons? There is but little evidence in regard to its medical department. It seems to have

included a hospital building, of which Dr. Gibbs had charge.   The plaintiff went there to have his hand treated, and was placed in a room and given a bed.   But he refused to remain there, and went to a hotel.

It does not appear that the defendant was under any obligation by contract to furnish surgical and hospital accommodations for its injured employes, and, so far as is shown, its doing so was wholly voluntary.   Its employes were under no obligation to avail themselves of the facilities for treatment offered, and paid nothing for them when accepted.   That the defendant maintained its medical department for its own advantage, and not for charitable purposes only, may be presumed, but that does not alter what appears to be the fact, that it was not maintained to discharge any statutory or contractual obligation.   In the case of *O'Brien v. Steamship Co.* (Mass.), 28 N. E. Rep. 266, the plaintiff sought to recover for damages alleged to have been caused by the negligence of the surgeon of the defendant.   He had been employed by the defendant under an act of congress which required every steamship or other vessel engaged in carrying or bringing passengers, other than cabin passengers, exceeding fifty in number, to carry a duly-competent and duly-qualified surgeon or medical practitioner, who should be provided with surgical instruments, medical comforts, and medicines proper and necessary for diseases incident to sea voyages.   The services of such surgeon or medical practitioner were required to be promptly given, in any case of sickness or disease, to any of the passengers who should need his services.   It was said that the master or owners of the vessel do their whole duty under that statute when they employ a duly-qualified and competent surgeon and medical practitioner and supply him with all necessary and proper instruments, medicines, and medical comforts, and have him

in readiness for such passengers as choose to employ him. That rule was followed in *Allan v. Steamship Co.* (N. Y. App.) 30 N. E. Rep. 483. In *Laubheim v. Steamship Co.*, 107 N. Y. 229, 13 N. E. Rep. 781, it was said: "If, by law or by choice, the defendant was bound to provide a surgeon for its ships, its duty to its passengers was to select a reasonably competent man for that office, and it is liable only for a neglect of that duty.  *  *  *  It is responsible solely for its own negligence, and not for that of the surgeon employed. In performing such duty, it is bound only to the exercise of reasonable care and diligence." In *McDonald v. Hospital*, 120 Mass. 422, the plaintiff sought to recover for damages caused by unskillful treatment. The defendant was a public charitable institution. It was held that it was, at most, liable only for a failure to use due care in selecting its inferior agents, and, if it had used such care in selecting the surgeon of whose conduct complaint was made, it was not further liable. We are of the opinion that the rule of the cases cited is applicable in this case. The charge of the court in regard to the liability of the defendant for the acts and omissions of its surgeons was based on the theory that it was responsible for their negligence. In that respect the charge was erroneous.

II. The appellee contends that, even if there was error in permitting a recovery on the second count of the petition, no prejudice resulted, because it clearly appears that he was entitled to recover on the first count. The appellant is fully as positive that there was no evidence upon which to base a recovery on that count, and insists that the court erred in not sustaining its motion for a judgment upon it. Of these conflicting claims, that of the appellant has the most support in the record. It appears that, at the time the coupling in question was attempted, the plaintiff gave the signal

to back slowly, or, as it is called, "the easy signal," to allow the cars to run back without pressure from the engine, and then went between the cars to make the coupling. At about that time, the head brakeman gave the engineer the signal to stop, which was obeyed. The plaintiff claimed in his testimony, and now claims in argument, that the action of the engineer in stopping his engine had the effect to increase the speed of the moving car nearest the stationary one, to which it was to be coupled. We are not entirely satisfied that the theory of the plaintiff in regard to this is sustained by the evidence, and think the jury would have been as apt to find for the plaintiff on the second as on the first count of his petition; and it is quite probable, in view of the charge of the court, that the amount of the verdict was increased by, if it was not wholly based upon, the second count.

III. The appellant insists that it was entitled to judgment on the first count. A rule of the defendant prohibited its employes from making couplings by hand, and required each one to provide himself with a stick or proper implement for raising and guiding the link. The plaintiff knew of the rule, and the court charged the jury that there was not sufficient evidence to show that the rule had been set aside or waived by any one having authority to do so; that, as the plaintiff knew of the rule, and voluntarily disregarded it, he could not recover for injuries he received by reason of any negligence on the part of the defendant which occurred prior to the time he went between the cars to make the coupling. It seems that, five or six years before the accident, the brakemen of the defendant used coupling sticks for about thirty days; that they have not been used since, and that couplings are universally made on the defendant's road by

hand.   Whether the court was justified in instructing the jury that the rule had not been waived is a question not before us for determination.   The signal of the head brakeman of which the plaintiff complains, was given after he went between the cars, and therefore, if negligently given, and a cause of the injury, the plaintiff might be entitled to recover under the charge of the court.

For the reasons shown, the court erred in not granting the defendant a new trial, and for its refusal to do so the cause is remanded for further proceedings. —*Reversed.*