## FARNON v. SILVER KING COALITION MINES CO.

No. 3025.   Decided August 30, 1917.   (167 Pac. 675.)

1. MASTER AND SERVANT—PLEADING—COMPLAINT—SUFFICIENCY. A servant's complaint alleging defendant's corporate capacity, its ownership of the mine, the employment of plaintiff, his place of work, the location of the shaft in which the cage was operated, its relation to plaintiff's place of work, the purpose of the cage, how it was operated by the engineer, the employment of the engineer, his duties in respect to the cage and the persons being carried therein, the carelessness of defendant company in failing to employ a competent engineer; and, finally, the carelessness and negligence of both the engineer and the company in operating the cage while attempting to convey plaintiff to his place of work, together with the consequent injury to him and his claim for damages—is sufficient. (Page 298.)

2. MASTER AND SERVANT—INJURIES TO SERVANT—VICE PRINCIPAL. An engineer whose duty was to operate a mine hoist carrying miners to and from a lower level was, as to such miners, a vice principal, for whose acts the operator was liable. (Page 299.)

3. MASTER AND SERVANT—INJURIES TO SERVANT—PLEADING. It is not objectionable to charge both the mine owner and a hoist operator with negligence in injuring a minor by dropping the hoist, the hoist operator being a vice principal. (Page 299.)

4. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANT. An engineer whose duty was to operate a mine hoist carrying miners to and from a lower level was not, as to a miner injured by the negligent dropping of the cage, a fellow servant. (Page 299.)

5. MASTER AND SERVANT—QUESTION FOR JURY—HAPPENINGS OF ACCIDENT. (Page 299.) Though it is not strictly a case of res ipsa loquitur, it is negligence as a matter of law for an engineer operating an electrically operated hoist cage in a mine to forget to set the clutch when he releases the brake whereby the cage was suffered to drop by its own weight, and the weight of its cargo, a vertical depth of 110 feet to the injury of a minor therein. (Page 299.)

6.  DAMAGES—AGGRAVATION.   Where the servant's broken leg was set,
    but in his delirium the cast was broken, and the bones could not be
    reset without loss of the leg, and a new cast was put on without the
    bones being in apposition, the amount awarded the servant should
    not be diminished because of anything the physicians did or failed
    to do.   (Page 301.)

Appeal from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by James Farnon against the Silver King Coalition Mines Company.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Dickson, Ellis, Ellis, & Schulder* and *Marioneaux, Stott & Beck* for appellant.

*Weber & Olson* for respondent.

THURMAN, J.

The respondent, a miner, was severely injured while in the employment of defendant corporation in one of its mines in Park City, Utah. His place of work was on the 600-foot level of what is known as the Alliance Tunnel. His mode of ingress and egress to and from his place of work was by means of a vertical double compartment shaft extending from the 500-foot level downward in which a cage was operated by an engineer employed by the defendant company. The cage was operated by means of an electric engine controlled and manipulated by the engineer, whose place of work was on the 500-foot level, about thirty feet from the top of the shaft. A cage was connected with the engine by a steel cable, and it was the duty of the engineer, by means of the engine, to lower and raise the cage as might be necessary for the purpose of carrying men to and from their places of work on the lower levels of the mine. The cage in its downward course was controlled by the engineer by means of a brake and clutch. When the men were in the cage and ready to be lowered, they would give a signal to the engineer, who would release

the brake and simultaneously set the clutch. The clutch prevented the cage from dropping to the bottom by its own weight. On the date of the accident in which the plaintiff was injured, he and another miner entered the cage on the 500-foot level for the purpose of being lowered to the 600-foot level, their place of work. They gave the signal to the engineer, who immediately released the brake, and, according to his own admission, forgot to set the clutch. The result was, the cage, by force of gravity, suddenly dropped to and upon a bulkhead constructed across the shaft at a point ten feet below the 600-foot level. The cage dropped by its own weight and the weight of its cargo a vertical distance of 110 feet, and, necessarily, fell with tremendous impact upon the bulkhead below. The plaintiff was severely injured in the fall. His left leg was fractured between the knee and hip about the middle of the long bone. His foot was crushed and lacerated on the bottom, and his whole side, clear up into the shoulder, was bruised, contused, and had begun to become discolored, due to extravasation of blood in the tissues, at the time the physician made his first examination. Plaintiff was taken to the hospital in Park City and treated for his injuries. After he had been there for several days, by some means unexplained, the cast, which had been used by the physicians in setting his limb and holding the broken bones in apposition so that the ends would knit together, became displaced and pushed down. The upper part of the leg became out of place. The bones, instead of being in apposition, lapped over. A new cast was put on the leg in that condition. No weight was attached or used on account of his nervous condition and the expressed fear of the attending physician that he would be more likely to lose his leg. The injury to the plaintiff was permanent. He brought this action to recover damages. The case was tried to a jury, and a verdict rendered in his favor. The defendant corporation appeals and assigns numerous errors, but relies mainly on the following:

"The court erred in overruling appellant's objection made at the trial to any evidence being received in this action on the ground that the plaintiff failed to state a cause of action."

"The court erred in giving to the jury the following portion of instruction No. 6: 'The court instructs you in this case, as a matter of law, that the dropping of the cage in the manner shown by the undisputed evidence in the case occurred through the negligence of the defendant Johnson, and that for such negligence both defendants Johnson and the Mining Company are equally responsible to the plaintiff.   *   *   *' "

"The court erred in giving the jury the following portion of instruction No. 13: 'The amount you are to award the plaintiff should not be diminished because of anything the physicians did or failed to do.' "

"The court erred in refusing to give to the jury the appellant's request No. 1, which was as follows: 'The court instructs the jury that under the undisputed evidence in this case the engineer Johnson was a fellow servant of the plaintiff, and that the defendant Silver King Coalition Mines Company is therefore not liable to the plaintiff for the injury which he sustained, and your verdict must be in favor of the defendant Mining Company.' "

The proposition of appellant relied on in its first assignment of error, that "the complaint fails to state a cause of action," will now be considered. The complaint, in substance, alleges: (1) Defendant's corporate capacity; (2) its ownership of the mine; (3) the employment of plaintiff; (4) his place of work; (5) the location of the shaft in which the cage was operated; (6) its relation to plaintiff's place of work; (7) the purpose of the cage; (8) how it was operated by the engineer; (9) the employment of the engineer; (10) his duties in respect to the cage and the persons being carried therein; (11) the carelessness of defendant company in failing to employ a competent engineer; and, finally, the carelessness and negligence of both the engineer and the company in operating the cage while attempting to convey plaintiff to his place of work, together with the consequent injury to him and his claim for damages. Not a single element of a good complaint against both defendants is omitted, although it may not be perfect in form as against objections made by a hypercritical pleader seeking

for technical defects. Plaintiff had the right to charge as many acts or omissions constituting negligence as, in the mind of the pleader, the circumstances warranted, and to rely upon one or all, according to the facts, without being subject to the charge of switching from one theory to another.

The defendant Johnson, under the allegations of the complaint, was a vice principal of the defendant corporation, and was employed to do work which could only be done by the company; and the company was responsible for the manner in which he did it, and could not, even if it desired, evade the responsibility or shift the burden to the shoulders of another. Hence the negligence of Johnson was also the negligence of the company, and the charge against both was therefore not objectionable from the standpoint of good pleading. Taking from the jury, for failure of proof, the charge of negligence in employing the engineer, did not and could not affect the other allegations charging both defendants with negligence in operating the cage. This assignment of error is manifestly without merit.

In this connection we may as well consider the trial court's refusal to instruct the jury as requested by the defendant, that the engineer Johnson and the plaintiff were fellow servants. This refusal of the court is assigned as error, but it is doubtful if appellant relies on it, inasmuch as it is barely referred to in the argument. What we have already said in this opinion practically disposes of this question also. The relation of the parties to each other and to the company, the nature of their work, and the places where they worked, rendered it impossible for them to have been fellow servants under any theory of the law as declared by our statute. This assignment, therefore, cannot be sustained.

But it is assigned as error, and urged with much force, that the trial court erred in instructing the jury as matter of law that the dropping of the cage in the manner shown by the undisputed evidence in the case occurred through the negligence of the defendant Johnson, and that for such negligence both defendants, Johnson and

the mining company, were equally responsible to the plaintiff. We have taxed our mentality in a conscientious endeavor to prepare a proper instruction that could have submitted this matter to the jury as a question of fact. Every instruction we have been able to conceive of, if given, would have been manifest error against the plaintiff.

While this is not a case of res ipsa loquitur, it is just as conclusive, and, if possible, more convincing and satisfactory, as proof of the fact.

The defendant Johnson was the company's engineer. His duty, as disclosed by the record, was to operate the cage for the purpose of carrying men and material to and from the lower workings of the mine. If the engineer kept control of the cage by properly using the brake and clutch, there was little or no danger. If, by inattention to these simple details, he lost control, disaster would result. His mind was not engrossed by attention to other duties. It was a position of grave responsibility, but the duties pertaining to it were so simple and free from complications as to render it almost impossible to fail in a proper performance of them, except through a want of care constituting negligence. The plaintiff, as before stated, on the occasion of the accident entered the cage to be lowered into the mine. The signal to lower was given to the engineer in the usual manner. He released the brake, but did not set the clutch. The result was inevitable. The cage, in which were the plaintiff and a fellow laborer, suddenly dropped to a depth of 110 feet, and, in the language of plaintiff's companion, who was a witness, "smashed into the bulkhead" below. The plaintiff was, as before stated, severely injured. The only excuse offered by the engineer for failing to set the clutch was that "it slipped" his "mind"; in other words, he forgot it. He forgot to perform one of the most important duties that was ever imposed by a master upon a servant. There is no possible excuse in law for such neglect. The instruction of the trial court was, in effect, the only proper instruction that could have been given under the undisputed facts. It therefore became a question of law, and the court did not err when it

took it from the jury. Labatt, Master and Servant (2d Ed.) vol. 4, p. 4995; Cyc. vol. 38, p. 1534, note 34, and cases cited.

There is but one question remaining to be disposed of, but the zeal and earnestness of appellant's counsel in maintaining the validity of their contention on this point implies a conviction which calls for a careful examination of the question. In its fifth assignment of error appellant charges that the court erred in giving to the jury the following portion of instruction No. 13: "The amount you are to award the plaintiff should not be diminished because of anything the physicians did or failed to do." Whether this instruction was valid or invalid depends, of course, upon the facts and circumstances of the case and the law applicable to such facts, rather than upon propositions of law applicable to a different state of facts.

As already stated, after plaintiff was taken to the hospital his injuries were dressed by the physicians. The ends of the broken bones of his leg were brought together in apposition so they would knit. The leg was then placed in a plaster cast. Other treatment was administered, but it is not pertinent here. After he had been in the hospital for several days under treatment, the attending physician was called to the hospital and found that the cast had been pushed down on the leg. The upper part of the leg was not in position. The attending physician called in another physician. They put a new cast on the leg and put the patient to bed without any weights on the limb. They decided if they put weights on they might lose the foot and the lower part of the leg. His nervous condition would not allow the use of weights, as the weights would be pulled one way or the other and he would be more likely to lose his leg. Instead of the bones being in apposition, as they were when first set, they had become displaced about two inches. They tried to replace the bones, but could not do it. They put on a new cast while the leg was in that condition. It would have required considerable force to pull the bones into position. They would have done more injury to the leg below than the overlapping of the bones would cause.

The foregoing is the substance of the testimony on that point of the attending physician, Dr. Browning. Upon the point that the limb could not be restored to apposition and weights put on under the circumstances, this testimony is corroborated by Dr. LeCompte, the assisting physician. The testimony also strongly tends to show that for several days before the cast became loose and displaced, and at about that time, plaintiff was more or less delirious, unconscious, and restless. There was also some evidence to the effect that plaintiff had indulged in intoxicants and became intoxicated. Appellant contends that this accounts for the condition he was found in when the cast became displaced; that while in a state of intoxication he himself removed the cast and thus became responsible for the increased injury. Respondent denies that he became intoxicated, and attributes the displacement of the caste to his unconscious movements while in a delirious condition. The court, by its instruction, fairly submitted this question to the jury. He instructed them to the effect that the plaintiff could not recover for increased injury caused by his own willfulness or negligence. The verdict of the jury is therefore conclusive against appellant's contention that any increased injury to the plaintiff was due to his own willfulness or negligence.

This brings us back to the particular question under review, Did the court err in instructing the jury that the damages to be awarded the plaintiff should not be diminished by anything the physicians did or failed to do? The question arises, What did the physicians do to increase the injury? As far as the record discloses, they did nothing that could have had that effect. They found the plaintiff in a certain condition, for which they were not in any sense responsible. They found him with the cast slipped down and the broken bones lapping one over the other. They did their best, under the circumstances, according to their testimony. They put on a new cast in the condition the limb was in without effecting an apposition of the broken bones, and without attaching weights to the limb. This, they concluded, would be impracticable and exceedingly dangerous. So far from doing anything to

increase the injury, what they did was a distinct benefit, and left the limb in better condition than they found it.

The next question is, What did the physicians fail to do that increased the injury? This question has already been answered. The testimony tends to show that all was done that could be done without making matters worse. We have the uncontroverted opinion of Dr. Browning and Dr. LeCompte, graduates of medical colleges and physicians of standing and repute. If their professional opinions as to what could be done, or what should have been done under the circumstances, were incorrect, they ought to have been controverted and the truth made to appear. But they were not, and their testimony and professional opinions stand in the record as uncontroverted facts. Unless, therefore, the law is such that a party who is responsible for an original injury may, nevertheless, be relieved from responsibility for an aggravation of that injury by accidental means, we cannot conceive how appellant in the case at bar can escape liability for whatever injuries the plaintiff has sustained. It is necessary, therefore, to give due consideration to the authorities cited by appellant in support of its contention.

Appellant cites the following cases: *Secord* v. *St. Paul, M. & M. Railway Co.* (C. C.) 18 Fed. 221; *Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co.* v. *Sullivan*, 141 Ind. 83, 40 N. E. 138, 27 L. R. A. 840, 50 Am. St. Rep. 313; *Eighmy* v. *Union Pacific Railway Co.*, 93 Iowa, 538, 61 N. W. 1056, 27 L. R. A. 296; *York* v. *Chicago, Milwaukee & St. Paul Railway Co.*, 98 Iowa, 544, 67 N. W. 574; *Atchison, T. & S. F. R. Co.* v. *Zeiler*, 54 Kan. 340, 38 Pac. 282; *South Florida R. Co.* v. *Price*, 32 Fla. 46, 13 South, 638; *Union Pacific R. Co.* v. *Artist*, 60 Fed. 365, 9 C. C. A. 14, 23 L. R. A. 581; 4 L. R. A. (N. S.) 66, subdiv. 4; notes 17 L. R. A. (N. S.) 1168; *Texas Central Railway Co.* v. *Zumwalt*, 30 L. R. A. (N. S.) 1206; 40 L. R. A. (N. S.) 486.

*Secord* v. *Railway Co.*, supra, is similar to the case at bar only in respect to the form of action. The plaintiff sought to recover damages for a personal injury. The question as to increased injury on account of negligence of the physicians

arose incidentally during the progress of the case, the same as in the present case. The opinion is merely instructions to the jury rendered by a federal district court during the trial of the case, and is subject to the criticism made by respondent, that it is not an opinion by an appellate court or on motion for a new trial, where opportunity is afforded for a deliberate exercise of calm and enlightened judgment. But, in addition to this, the case is one in which the court submits to the jury two questions of fact, namely: (1) Whether or not the plaintiff himself was guilty of contributory negligence; and (2) whether or not the attending physician selected by the company was negligent in his treatment and the injury to the plaintiff was thereby increased. In either case, if answered in the affirmative, the court states the law to be that plaintiff could not recover. But as we have shown in the present case, the jury, by its verdict, found the plaintiff was not guilty of either willfulness or negligence, and the undisputed facts show the physicians were not. In our judgment, respondent concedes too much when it admits that the Secord Case supports appellant's contention.

In *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Sullivan,* supra, the plaintiff sued the defendant direct for damages incurred by the alleged malpractice of a company physician in amputating his arm while treating him for an injury to his hand, which occurred while engaged in coupling cars on defendant's railroad. The physician administered chloroform to the plaintiff under promise to him that he would not amputate his arm while under its influence. The original injury was apparently lost sight of entirely. There was no claim for damages on that account. The court held that if the defendant in that case used reasonable care in selecting a competent physician it was not responsible for his acts or omissions. This seems to be the law in a case of that kind, but it has no application to the facts of this case.

In *Eighmy* v. *U. P. Ry. Co.*, supra, the plaintiff, a brakeman, while coupling cars on defendant's road, had his hand crushed between the bumpers of the cars. He sued for damages on two counts—one directly for the injury occurring in the accident;

the other for negligent treatment by the company physician. On the first count the special verdict of the jury went far towards establishing plaintiff's contributory negligence. The jury returned a general verdict for plaintiff for $1,500 damages. This is another case in which the court held that the duty of defendant was discharged when it selected a reasonably competent physician, and that in such case it was not responsible for his negligence. It is not necessary for us to express an opinion as to whether or not we approve that opinion. It is sufficient to say it has no application in a case where, as matter of law, the court is able to say the physician was not negligent.

*York* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, supra. In this case the plaintiff's intestate was injured in a collision and was treated by a physician selected by the company. The injury proved fatal. Plaintiff sued for damages. The case was tried by a jury. At the close of the evidence the court directed a verdict for the defendant. Damages were claimed both on account of the accident and the negligence of the physician. Having found that the defendant was not liable for the accident, the court applied the ordinary rule that defendant was not liable for the negligence of its physicians if it used ordinary care in selecting reasonably competent persons.

*Atchison, T. & S. F. R. Co.* v. *Zeiler*, supra. In this case plaintiff's intestate was injured in a railroad accident on defendant's railroad and subsequently died. The action was for both the original injury occurring in the accident and for negligent treatment by the physician. As to the original injury, defendant was held not liable, as the injury resulted from the negligence of a fellow servant. On the question of negligent treatment by the physician, the court held in accordance with the usual rule; there being no allegation or proof that the physician employed was not competent or skilled in his profession, the company could not be held liable for his negligence.

*Union Pacific R. R. Co.* v. *Artist,* supra. The question to be decided in this case is thus put by the learned judge who rendered the opinion:

"Was the company liable for the malpractice of the physicians or the carelessness of the attendants at the hospital, if that hospital was maintained as a charitable enterprise and not for the purpose of deriving profit from it?"

The court decided it was not. The question put and determined by the court shows that the case has no application here.

The case and notes in 17 L. R. A.. (N. S.), 30 L. R. A., and 40 L. R. A. (N. S.) shed no light whatever on the question now under review. They are generally to the same effect as the cases we have examined.

In view of the facts found and opinion expressed before commencing a review of these cases, it was perhaps unnecessary to devote the time we have to their consideration. Our excuse for so doing has been promoted by a desire to make our position as clear and free from doubt as possible. Finding, as we do from the record before us, that the increased injury to the plaintiff was not due to his own negligence or willfulness, or to any intervening efficient cause, it follows as a matter of law, that it must be attributed to the original injury resulting from the negligence of the defendant. This being the view of the court, it is not necessary to review the authorities cited by respondent or the other assignments of error.

The judgment of the trial court is affirmed, respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.