JENNY F. PLIMPTON, PLAINTIFF-APPELLANT, v. LOUIS FRIEDBERG, DEFENDANT-RESPONDENT.

Argued February 9, 1933—Decided April 27, 1933.

For the plaintiff-appellant, *Cole & Cole.*

For the defendant-respondent, *William Charlton.*

The opinion of the court was delivered by

Case, J. Plaintiff appeals from a judgment entered on a directed verdict for the defendant, Louis Friedberg, in the Atlantic Circuit in an action brought by the plaintiff for the alleged fraud of several defendants—judgment of nonsuit having gone in favor of all except Louis Friedberg—in selling to the plaintiff, on March 12th, 1930, for the total sum of $26,200 oil paintings represented by the defendant to be by the artists Romney, Gainsborough and Reynolds, respectively, all well known English artists of the eighteenth century, whose works bring large prices. None of the paintings were by the named artists. The sum of $18,000 was paid for the alleged Romney and $8,200 for the Gainsborough and the Reynolds. The trial judge in directing the verdict stated that although it was admitted that the representations had been made and that they were not true, nevertheless the evidence did not establish that defendant, when he made the representations, knew them to be untrue.

The rule as to pleading and proof in actions for deceit has been tersely stated to be that the plaintiff must allege with reasonable certainty and be prepared to prove: (1) that the defendant made some representation to the plaintiff meaning that she should act upon it; (2) that such representation was false and that the defendant, when he made it, knew it to be false; (3) and that the plaintiff, believing such representation to be true, acted upon it and was thereby injured. *Kosobucki* v. *McGarry,* 104 *N. J. L.* 65. This may be amplified by adding that the falsity may consist in making a representation of a material fact knowing it to be false, or in

making a representation which is untrue without knowledge whether it is true or false and by coupling with the representation an express or implied affirmation that it is known to be true of personal knowledge. *Crosby* v. *Wells,* 73 *Id.* 790, 801; *Cummings* v. *Cass,* 52 *Id.* 77; *Thompson* v. *Koewing,* 79 *Id.* 246.

The representations laid against the defendant were made. They were material and were made with the intention that they should be acted upon. They were false. They were believed by the plaintiff and were acted upon by her to her very considerable financial loss. There was no express affirmation by the defendant that he had personal knowledge. The issue before us is whether the proofs were sufficient to go to the jury on either the question of implied affirmation of personal knowledge or on the question of actual knowledge of falsity.

The evidence is persuasive of shifty business methods on the part of the defendant and contains enough, we think, to present a jury question. Friedberg held himself out as conducting a high grade and long established art gallery—the oldest on the boardwalk. Plaintiff was induced to enter the place of business. Defendant was engaged in auctioning off various articles. The plaintiff testifies: "Well, he was on the block there and I sat over here, and he got down. He had been selling some things, I don't remember what, nothing that particularly interested me, and he went back, and then he shortly came forward very much excited. He had something wonderful to sell. * * * He was excited about these wonderful things he had to put up. * * * Here was a wonderful Gainsborough and here was a wonderful Reynolds, genuine, of course. No doubt about that. And that is why I bought them, because they were genuine. * * * Well, he said he had another and finer painting, a great artist, and so forth, and then this Romney was brought out from the rear of the store." The defendant then asserted that that was a genuine Romney, and the plaintiff, believing, paid $18,000 for that picture. The cost of the picture to the defendant, according to his testimony, was $3,500. The plain-

tiff received formal documents purporting to be signed by Boardwalk Art Gallerie, Incorporated—not then in existence —which was one of the names under which the business appears to have been conducted, certifying to the authenticity and purported history of the several paintings, giving detailed data. The Reynolds certificate was entitled "Portrait of Lady Bancroft Burton by Sir Joshua Reynolds," and asserts that "this picture was retained for many years at the family seat, Seaton Hall Thorne, near Doncaster, but unfortunately had to be sold with furniture and effects owing to financial difficulties." This and more about the Reynolds; and to like effect the Gainsborough and the Romney certificates. The testimony of G. Frank Muller, an expert, was that the insurance and commercial value of the three paintings at the time of the sale was from five hundred to one thousand dollars, that none of the paintings were genuine and that they had little artistic merit. To the subject that the paintings were not by the named artists Muller testified positively, not as a matter of opinion. The matter was one susceptible, according to the testimony, of accurate knowledge.

At the trial Friedberg testified that when he sold the pictures he had no knowledge as to the identity of the paintings except "through the word of Mr. Barclay," who had consigned the pictures to him; later he acknowledged that at the time of the sale he had had no direct communication from Barclay and that he had relied upon a statement made to him by his wife. Neither Mrs. Friedberg nor Barclay testified. When holding the paintings out for sale, Friedberg did not say that they were "attributed" or "assigned" to, or "said to be by" this or that artist. He made positive statements of genuineness.

Without further elaboration of the testimony we express our opinion that the case should have gone to the jury on the question whether, out of the circumstances in proof, there was an implied affirmation by the defendant that the representation was known to be true of his personal knowledge.

Further, we think that the testimony discloses circumstantial evidence sufficient to go to the jury on the question

of actual knowledge of falsehood. There is a background of lights and shadows more consistent with clever illusiveness than with frank business dealing. Louis Friedberg was the real personality of the business, but the business appears to have been done with ready exchangeability under several names—Boardwalk Art Gallerie, Incorporated—a corporation of that name having been dissolved in 1927—Boardwalk Art Gallerie, Louis Friedberg, individually; Louis Friedberg & Co., a corporation, and Louis Friedberg and Company, referred to by the defendant on the witness-stand as a firm of which he was a member. The jury may not have been satisfied with the explanations advanced for the use of these several names. As to who did actually conduct the business, there is this testimony by Mr. Friedberg: "Q. Were you conducting any business there at that time? A. I was conducting the business under a—that is, as a member of the firm of Louis Friedberg and Company." Correspondence with the plaintiff now bore the letterhead "Established 1908, Oldest Established Art Gallerie on the Walk—Boardwalk Art Gallerie," and again "Established 1908, Oldest Established Art Gallerie on the Walk, Louis Friedberg;" although the business was not established at Atlantic City so early as 1908, and the name of Louis Friedberg and Company, either as a firm or corporation, does not appear on the business letter paper or on the statement or certificates sent to the plaintiff.

The business, by whomever owned and operated, took a solicitous and rather unusual care of plaintiff, an old lady nearly seventy-five years of age, during her stay in Atlantic City. Each day she was taken for a pleasure drive about the vicinity, and upon her return to her home in Buffalo she was driven the entire distance by automobile. The *eclat* with which the defendant, after a brief absence from the auction block, returned and announced the distinguished offering he was about to make had dramatic effect upon the plaintiff, meanwhile seated nearby with a salesman at her side. We think also that a sinister significance may be attributed to the fact that not merely one or even two, but all three of

the pictures were grossly misrepresented. Momentum is given to the suggestion that a conscious fraud was being perpetrated. Friedberg said that he believed the pictures were authentic, and that in so believing he relied upon the assurance of the consignor, Barclay, communicated to him through Mrs. Friedberg. But did he? Had he really received an assurance from Barclay at the time of sale? Friedberg, by his own representation, was an experienced salesman of works of art. Was the price from Barclay to Friedberg one at which a genuine Romney was likely to be sold, considering the price at which Friedberg immediately resold? Friedberg admits that the paintings were falsely represented. Did he ever charge Barclay with having deceived him? Were his subsequent actions those of a man who had been grossly deceived to the point of wronging an old lady? What of the detail and the strange execution of the certificates?

Having suggested some of the matters and questions of fact that circumstantially bear upon *scienter,* we conclude that the case should have gone to the jury thereon.

The judgment below will be reversed, to the end that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.