36 N.J. Super. 598 (1955)
116 A.2d 725
GEORGE F. CLAUS, PLAINTIFF,
v.
WILLIAM F. BRODHEAD AND UNION MEDICAL CLINIC, INC., JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 9, 1955.
*600 Messrs. Rothbard, Harris and Oxfeld (Mr. Howard Goldberger, appearing), attorneys for plaintiff.
Messrs. Green and Yanoff (Mr. Leo Yanoff appearing), attorneys for defendant.
WAUGH, J.C.C. (temporarily assigned).
The corporate defendant moves for summary judgment in its favor (although the notice of motion seeks summary judgment in favor of the plaintiff); or in the alternative to remand the matter to the district court for trial on the ground that the amount in litigation is within the jurisdiction of the district court; and to amend the pretrial order with respect to the name of the doctor performing the operation in question.
Plaintiff, George F. Claus, filed a single count complaint against a Dr. William F. Brodhead and Union Medical Clinic, Inc. The gravamen of the complaint is set forth in paragraph No. 8 thereof:
"8. On or about October 11, 1952, the defendant, William F. Brodhead, an officer, agent, servant or employee of the defendant corporation, without warning, notice or consent of the plaintiff or request and permission from the plaintiff, did wilfully, recklessly, fraudulently, carelessly and negligently, inflict an assault and battery upon the plaintiff, in that he did perform an operation on the plaintiff involving surgery."
The individual defendant, not now a resident of the State, was not served; the corporate defendant answered; pretrial procedure has been completed and the case pretried.
While the complaint is inartistically drawn and does not actually plead fraud in accordance with rules of court (see R.R. 4:9-1), the pretrial order, dated June 1, 1955, states *601 "suit is based upon assault, battery, and fraud," and further states: "the fraud and misrepresentation on which plaintiff predicates its case is a pamphlet (marked P-2 for identification) and also certain representations made by defendant's alleged agent, Dr. Brodhead, and also a nurse in the Clinic (unidentified) and Dr. Harry Hallabach, Secretary and Treasurer of the defendant Corporation, on the representations that he would be cured of his hemorrhoids without surgery."
The following facts are to be gleaned from the pleadings, affidavits and depositions. Since 1950, plaintiff suffered from hemorrhoids. Desiring to avoid surgery, he sought other means of cure. He answered an advertisement of defendant corporation and received a booklet (P-2 for identification) setting forth a method of treating rectal ailments. Among other bits of information this pamphlet states:
"In selected cases, where neglect has not been prolonged  and this includes most cases of internal piles  the patient will respond to injection treatment."
"The injection treatment is not painful. Relief comes quickly. And if the physician's schedule of treatments is adhered to, a cure can be effected."
"In the past, the treatment of fistula meant a surgical operation which in many instances proved unsatisfactory because it frequently missed side pockets and blind channels."
"A competent physician can free you from pain by the injection treatment when he accepts your case."
The sufferer is further advised that:
"Any sufferer actually interested in being treated by a physician recommended by me, will upon request, be furnished with ample and conclusive proof of the successful record of our recommended physicians in effecting cures for persons with similar ailments who have freely expressed their gratitude over their own signature. These letters come to us from people in all walks of life, poor and rich alike."
and
"Note: The doctor who treats you becomes your personal physician. He, alone, is responsible to you."
Plaintiff wrote the corporate defendant, and received a reply from the individual defendant suggesting an appointment *602 Defendant kept the appointment and began a series of injections for which he paid $200 in cash and check, payments being made to Dr. Brodhead, a nurse and one Harry Hallabach, secretary-treasurer of the defendant corporation.
During the course of treatments the plaintiff was told by Mr. Hallabach, Dr. Brodhead and the nurse, "We do not operate here. We do not operate. We treat only by injection."
Plaintiff claims that an operation was performed on him without his consent on October 11, 1952. This alleged operation is best set forth in plaintiff's own words taken from his deposition:
"Q. Now, you say that an operation was performed upon you? A. Yes, yes, sir.
Q. Who told you that an operation was going to be performed upon you? A. Nobody told me that. On three previous occasions, three different people, Harry Hallabach, the owner, Dr. Brodhead and a nurse told me, `We do not operate here. We do not operate. We only treat by injection.'
Q. Well, what happened to you on October 11, 1952? A. Well, previous to that I had found the injection treatment had finished by my payments and I asked Dr. Brodhead, `How about giving me a release? It's tiresome rushing home from work and coming over here.'
`Well,' he says, `All right.' He says, `Some Saturday afternoon you come over here and I'll take care of those crips.'
I says, `Crips? What are crips.'
He says, `Pimples.'
I went home then and I looked up in the book and crips seemed to be pimples. So I took for granted that you puncture a pimple to relieve it, I figured I knew what I had gone through previously. The injection treatments are simply a needle, a syringe with liquid in and they put a cone shaped thing in you and it had little holes in it and they pierce those little holes and inject the liquid in you. I took it for granted that I'd get on the table and they'd inject me in exactly the same manner as they had for the previous injection treatments.
Q. Now, didn't they tell you that you would feel a prick and that was the anesthetic? A. Nobody told me anything.
Q. Didn't the nurse say to you they would inject you with an anesthetic first? A. I don't recall that, no, sir. I simply got down, took my trousers down and laid sideways on the table, as I had through, on I don't know, probably thirty, forty previous visits, and the doctor went to work. I did feel needle pricks, but, as I say, I took for granted that was to take care of these crips, as he calls them.
*603 Q. Now, after the operation was concluded did the doctor tell you anything about after care? A. Yes, sir, yes, sir.
Q. What did he tell you? A. He gave me a folder, a sheet, which had instructions on it and he told me what to do. They put surgical cotton, they stuffed it up in me and he told me to leave that there for three days and to live on only liquids; do not take any solids whatsoever.
Q. Is this the sheet of instructions which they gave you? A. after three days.

* * * * * * * *
Q. Did they also give you a salve for you to apply? A. Yes. Yes, they gave me a little tin of salve.
Q. Now, when you got this sheet you were aware that there had been an operation of a sort performed, were you not? A. Yes; yes, sir. I thought it was taking care of these crips, as he had told me."
The relationship between the corporate and individual defendants is set forth in answers to interrogatories as follows:
"3(q) Set forth whether the arrangements by the defendant, Union Medical Clinic, Inc. and defendant, William F. Brodhead were oral or in writing, and if in writing set forth a copy thereof, and if oral set forth as specifically as can be the details of said arrangements.
A. Oral arrangements between Dr. Brodhead and defendant under which defendant paid rent, nurses and fixed overhead on quarters at 207 Market Street, Newark, New Jersey. Brodhead had complete charge of medical procedure and patients. He set and received all fees, made referrals to all doctors, administered and supervised all treatments. All monies he received were deposited into account of Union Medical Clinic. Out of the fees received, Brodhead obtained $200 per week until about August 9, 1952 and $160 per week thereafter. From the sum which he received, he paid all associate physicians. Payment was made from the balance for overhead, nurses, medication and fixed charges. The net remaining was divided between Dr. Brodhead and Union Medical Clinic."
In oral argument and in their respective briefs, counsel argued the matter of summary judgment as if the case were a negligence case. For example, counsel for the plaintiff sets forth the following quotation from 41 Am. Jur., sec. 116, p. 227:
"Sec. 116. Right of patient against Third Persons; Hospitals. 
The malpractice of a physician or surgeon may render liable for damage persons other than himself, although such persons may not *604 themselves be physicians or surgeons and cannot personally be guilty of actual or attributed malpractice. Clearly, a corporation or an individual employing a physician to act as its or his agent is liable for the malpractice of the physician, being held on the ordinary principles of agency, as for example, where a department store runs a dental office in connection with and as a part of its business. This would be true, a fortiori, where the corporation employing the practitioner was not legally qualified to do business in the State. But it is the general rule that a physician or surgeon, being a professional man who is entirely free to exercise his skill and his soundest judgment in rendering medical or surgical services without any interference from one who employs him, is not a servant or agent in the usual sense of those terms."
The underlined portion was not set forth in plaintiff's memo. New Jersey follows the majority rule. In Myers v. Holborn, 58 N.J.L. 193 (E. & A. 1895), Chief Justice (then Justice) Gummere holds that it was error to hold a doctor liable for the negligence of another doctor whom he sent to attend a patient in his place. At page 195, he said:
"In this, it seems to me, there was an error. Dr. P. and the defendant were each of them practicing physicians of this state, having no business connection with one another, except that Dr. P. was attending the patients of the latter while he was temporarily absent. Even if it be admitted, therefore, that Dr. P. was employed by the defendant to attend upon the wife of the plaintiff, that fact did not render the defendant liable for his neglect or want of skill in the performance of this service, for an examination of the authorities will show that a party employing a person who follows a distinct and independent occupation of his own is not responsible for the negligent or improper acts of the other. Laugher v. Pointer, 5 Barn & C. 547; Milligan v. Wedge, 4 Perry & D. 714; DeForrest v. Wright, 2 Mich. 368; Wood M. & S. Sec. 311."
And in the case of Tutino v. Ford Motor Co., 111 N.J.L. 435 (E. & A. 1933), Justice Bodine said:
"If the acts of the nurses and physician employed by the defendant were of such a kind and character as would break the casual connection between the accident and the resulting injury, the plaintiff's right of recovery must be predicated either upon a common law action due to some failure or a duty arising out of or in the course of the employment for which the compensation under the statute is the exclusive remedy, or because the defendant is liable for the malpractice of the doctors and nurses employed by it. Usually one *605 employing doctors and nurses to attend to the needs of employees is held merely to the duty of exercising reasonable care in the selection. 39 Corpus Juris 244.
Judge Lowell in Powers v. Massachusetts Homeopathic Hospital, 1 Cir., 109 F. 294, 298, 65 L.R.A. 372 said:
`The courts of this country have held that a railroad company, having in its regular employ physicians and surgeons whose duty to the corporation requires them to care for the sick and injured among the corporation's employees is not liable to those employees for the malpractice or other negligence of these medical men. [Chicago B. & Q.] Railroad Co. v. Howard, 45 Neb. 570, 63 N.W. 872; Clark v. [Missouri Pac.] Railway Co., 48 Kan. 654; 29 P. 1138; Quinn v. [Kansas City M. & B.] Railroad Co., 94 Tenn. 713, 30 S.W. 1036, 28 L.R.A. 552, 45 Am. St. Rep. 767; [South Florida] Railroad Co. v. Price, 32 Fla. 46, 13 So. 638; Eighmy v. [Union Pacific] Railroad Co., 93 Iowa 538, 61 N.W. 1056, 27 L.R.A. 296; [Union Pacific] Railroad Co. v. Artist, [8 Cir.], 60 F. 365, 9 C.C.A. 14, 23 L.R.A. 581. * * * It has also been said that the doctor is not the servant of the corporation, for the reason that, in treating the patient, he does not take his orders from the corporation, but is guided altogether by his own judgment.' He also held that the employer was not liable for the acts of nurses.
A similar rule has been declared in Massachusetts. O'Brien v. De Koninglyke Cunard Steamship Co., 154 Mass. 272 [28 N.E. 266]. In Laubheim v. Netherland Steamship Co., 107 N.Y. 228 [13 N.E. 781], Judge Finch said, in a case where the defendant was obliged to furnish a physician: `It is responsible solely for its own negligence, and not for that of the surgeon employed. In performing such duty, it is bound only to the exercise of reasonable care and diligence, and is not compelled to select and employ the highest skill and longest experience. There was no evidence in this case that the defendant was careless or negligent in its choice.'"
The case at bar is not predicated upon negligence or the negligent selection of Dr. Brodhead by the corporate defendant.
The two issues in the case are those of assault and battery and of fraud.
While the claims of assault and battery may well appear tenuous, it is not now the function of the court to adjudge the facts of plaintiff's claim. It is enough that "treated indulgently" the plaintiff has a jury case.
"Issues of credibility are ordinarily for the trier of fact, and the judge does not function as a trier of fact in determining a motion for summary judgment." Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954).
*606 An assault and battery has recently been defined by our Appellate Division in Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. 390, 398, 399 (App. Div. 1951); certification denied 13 N.J. 527 (1953):
"We are of the opinion that the trial court erred in dismissing the plaintiffs' action of assault and battery against the defendants as asserted in count three of their complaint. The defendants contend that the acts performed by Brown were an attempt to administer aid to an injured skater, barren of any intent to inflict bodily harm and in an effort to assist recovery by the injured patron. The least manual touching of the body of another against his will constitutes an `assault and battery.' Moore v. Camden and Trenton Railway Co., 74 N.J.L. 498 (E. & A. 1907); Central R.R. Co. of N.J. v. Simandl, 124 N.J. Eq. 207 (Ch. 1938); affirmed 125 N.J. Eq. 91 (E. & A. 1939). `The fact that the defendants were actuated by no improper motives in doing as they did, could not be material in a case where only compensative damages were sought to be recovered. That which is, essentially, a trespass, cannot become lawful from being done with good intentions, neither can the manner of doing the thing affect its intrinsic character. If unlawful in its own nature, it must continue to be so, however carefully or skillfully it may be done.' Bruch v. Carter, 32 N.J.L. 554, at p. 562 (E. & A. 1867); Moore v. Camden and Trenton Railway Co., supra; 4 Am. Jur., Assault and Battery, sec. 5, p. 128. The defendant, Victor J. Brown, concededly was not a medical doctor nor one authorized to administer bodily treatment for one suffering an injury. In the face of the protestations of Mrs. Clayton and her husband, he manipulated and pulled her arm with `heavy force' causing her pain. Although his acts may have been performed with the best of intentions, it is clear that plaintiffs' proofs raised a jury question as to the unlawfulness of his acts, particularly in view of the fact that he did not obtain the consent of Mrs. Clayton. Consequently, the jury might well have found that Brown's conduct constituted an assault and battery upon her and would have warranted a verdict against Brown and his employer for the consequential damages occasioned thereby. Such is the settled rule with respect to even those who are skilled in medical science and licensed to practice as such. Mr. Justice Garrison, speaking for the Supreme Court in Bennan v. Parsonnet, 83 N.J.L. 20 (1912), stated the prevailing rule in this State at pp. 22, 23: `The trial judge in his charge followed the opinion of Judge Brown in Mohr v. Williams, decided by the Supreme Court of Minnesota (95 Minn. 261, 104 N.W. 12), which, as annotated in 1 L.R.A. (N.S.) 439, correctly presents the common law rule upon the subject. That rule is thus stated in 1 Kinkead on Torts, § 375: "The patient must be the final arbiter as to whether he shall take his chances with the operation or take his chances of living without it. Such is the natural right of the *607 individual which the law recognizes as a legal right. Consent therefore of an individual must be either expressly or impliedly given before a surgeon may have the right to operate."' In Barnett v. Bachrach, 34 A.2d 626, 627 (Mun. Ct. of App., D.C. 1943), the New Jersey rule was given emphasis: `We recognize and follow the rule announced in a number of cases, including the celebrated case of Schloendorff v. Society of New York Hospital, 211 N.Y. 125, 105 N.E. 92, 93, 52 L.R.A.N.S., 505, Ann. Cas. 1915C, 581, in which Justice Cardozo said: "Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages. * * * This is true, except in cases of emergency where the patient is unconscious, and, where it is necessary to operate before consent can be obtained."'"
While under our law a corporate employer may not be held for the negligence of a physician employee in the absence of negligence in his selection, there appears to be no rule of law nor any reason in justice why it should not respond in damages for an assault and battery impliedly or expressly inflicted in the presence of a corporate officer. Such is in accordance with our settled law. Clayton v. New Dreamland Roller Skating Rink, Inc., 14 N.J. Super. 390 (App. Div. 1951), certification denied 13 N.J. 527 (1953); Gindin v. Baron, 11 N.J. Super. 215 (App. Div. 1951); Gindin v. Baron, 16 N.J. Super. 1 (App. Div. 1951); Gates v. St. James Operating Co., 122 N.J.L. 610 (Sup. Ct. 1939); Wendelken v. N.Y. & S.W.R.R. Co., 88 N.J.L. 270 (E. & A. 1913); Zullo v. Central Railroad Co. of N.J., 9 N.J. Super. 49 (App. Div. 1950).
In this case the jury might infer that the alleged assault and battery was inflicted in the presence of Mr. Hallabach, the corporation's secretary-treasurer. This inference might be drawn from the fact that he was present on many occasions of treatment and on the day of the alleged assault "* * * came by and he showed me [the plaintiff] this pint jar of liquid with about eight or nine pieces of flesh in there * * *." (Plaintiff's deposition, p. 12)
The charge of fraud must now be considered. The pretrial order states:
*608 "The fraud and misrepresentation on which plaintiff predicates its case is a pamphlet (marked for identification, subject to objection as to materiality) and also certain representations made by defendants alleged agent Dr. Brodhead and also a nurse in the clinic (unidentified) and Mr. Harry Hallabach, Secretary and Treasurer of the defendant corporation, on the representations that he would be cured of his hemorrhoids without surgery."
The essential proof in cases of fraud in this State are set forth in the following cases: Plimpton v. Friedberg, 110 N.J.L. 427 (E. & A. 1933), where the court said at page 428:
"The rule as to pleading and proof in actions for deceit has been tersely stated to be that the plaintiff must allege with reasonable certainty and be prepared to prove: (1) that the defendant made some representation to the plaintiff meaning that she should act upon it; (2) that such representation was false, and that the defendant, when he made it, knew it to be false; (3) and that the plaintiff, believing such representation to be true, acted upon it and was thereby injured. Kosobucki v. McGarry, 104 N.J.L. 65."
Newark Live Poultry Co. v. Fauer, 118 N.J.L. 556 (Sup. Ct. 1937), affirmed 120 N.J.L. 187 (E. & A. 1938).
In Racanti v. Black Diamond Stevedoring Co., Inc., 132 N.J.L. 250 (E. & A. 1944), Mr. Justice Heher said at page 251:
"Where false representations are wilfully made as to a material fact, for the purpose of inducing another to act upon them, and he does so to his injury, he may recover such damages as proximately result from the deception."
In this case there is no proof whatever that any representation set forth in the pamphlet, D-2 for identification, is not true.
Under the Myers v. Holborn and Tutino v. Ford Motor Co. cases, the doctor and nurse are not agents for the purpose of treatment and statements made by them would not be binding on the corporate defendant. Furthermore, there is no proof whatever that plaintiff was operated on for hemorrhoids. According to plaintiff his case rests upon the theory of removal of crips by unauthorized surgery.
*609 An order may be presented granting summary judgment to corporate defendant on the pleadings in so far as they charge fraud, and limiting the trial of the issue between the present parties to:
1. Relationship between Dr. Brodhead and the corporate defendant.
2. Liability of corporate defendant for assault and battery.
3. Alleged express or implied consent by the corporate defendant through Mr. Hallabach of the alleged assault and battery.
4. Damages, compensatory and punitive.
The motion to remove this action to the district court is denied.
The motion to amend the pretrial order is allowed. The last sentence of paragraph numbered 16 will read:
"Defendant admits the operation was performed by Dr. Eugene S. Zeiner."