## Kentucky Service Co. v. Miracle.

(Decided Jan. 17, 1933.)

798

J. N. SAUNDERS for appellant.

P. M. McROBERTS and T. J. HILL, Jr., for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Through his father as next friend, Chester Miracle, an infant, brought this action against the Kentucky Service Company to recover damages for personal injuries. From a verdict and judgment in his favor for $1,500, the company appeals.

The facts are these: On the occasion of the accident a lineman of the company was engaged in stringing an electric wire diagonally across the public highway at a point just south of McKinney, and at the lowest point the wire sagged about five or six feet above the highway. While the wire was in this position, a truck driven by Lloyd Miracle, Chester's brother, approached. In the seat with Lloyd was his mother, and in the back end of the truck were two or three children. Chester was standing on the running board of the truck, and holding to the side of the cab. On going up Chester had lost his watch, and was standing on the running board to see if he could find it. The wire came in contact with the truck just above the hood, and the truck was deflected to the side, and ran into a post. To avoid being mashed by the post, Chester jumped off and received the injuries of which he complains.

There can be no doubt that appellant was negligent in the stringing of the wire across the highway low enough to come in contact with motor vehicles without stationing some one there to give warning to the drivers.

After appellant's special demurrer was sustained, appellee filed an amended petition making his father a party plaintiff. At the conclusion of appellee's evidence, "the defendant asked to dismiss the case so far as the petition asked for a recovery by reason of loss following permanent injury received because the mother of the boy is not a party to the suit," and the motion was overruled. It is insisted that the father and mother were necessary parties; that the father was not properly made a party; and, the mother not being a party, appellant's motion should have been sustained. In view of the conclusion of the court, it will not be necessary to determine whether the father was properly made a party, or whether the fact that his mother was not a party was properly raised by the motion. Where an infant is injured by the negligence of another, two causes of action arise: One in favor of the infant for his pain and suffering, and the permanent

impairment of his power to earn money after reaching the age of 21 years; the other, in favor of his parents, section 326a-1, Kentucky Statutes, for the loss of the infant's services until he reaches his majority, and for nursing and taking care of him, and expenses for medicines and medical services. Interstate Coal Co. v. Trivett, 155 Ky. 795, 160 S. W. 731. But the parents may waive their right of recovery and permit their infant child to recover the full amount to which they and the child would be entitled if separate suits were brought. Here appellee's father brought the action on behalf of appellee, and appeared as a witness in the case, and there can be no doubt that he waived his right to recover. Chesapeake & O. R. Co. v. Davis, 119 Ky. 641, 60 S. W. 14, 22 Ky. Law Rep. 1156. The mother occupies substantially the same position. She, with actual notice of the nature and effect of the action brought by appellee, and of the amount and character of damages he was seeking to recover, did not institute a separate action, but appeared as a witness in the case, made no objection to the action, and did not assert her right to any portion of the recovery. In the circumstances, she, too, waived her right of action in favor of appellee, and is estopped from instituting a new action to recover damages she might have recovered by the assertion of her right in seasonable time. Louisville, H. & St. L. R. Co. v. Lyons, 156 Ky. 222, 160 S. W. 942. The case is made all the stronger by the fact that the instruction on the measure of damages allowing appellee full recovery was given on motion of appellant. It follows that appellant is not in a position to complain that either appellee's father or mother was not a party to the action.

The placing of the wire across a public highway low enough to come in contact with passing vehicles is so unusual that it hardly can be said that appellee was guilty of contributory negligence as a matter of law either because he failed to see the wire, or because he was riding on the running board and was looking for his watch at the time. All that the law required of him was the exercise of ordinary care for his own safety, and whether he exercised such care was a question for the jury. R. B. Tyler Co. v. Kirby's Adm'r, 219 Ky. 389, 293 S. W. 155.

The further point is made that the entry after judgment of a nunc pro tunc order controverting of

record the affirmative defense of contributory negligence pleaded in the answer was error. The basis of the contention is that there was nothing of record authorizing the order. It is admitted in the motion and grounds for a new trial "that it was agreed in open court between the attorney for defendant and the attorneys for plaintiff to let the affirmative allegations of the answer be controverted of record." Having admitted the agreement, it is not perceived how the entry of an order carrying the agreement into effect was in any way prejudicial to appellant.

Lastly, it is insisted that the verdict is excessive. The evidence discloses that appellee's shoulder was dislocated and put in a sling by Dr. Jones, that the injury was painful, and that the doctor did not see appellee any more. Before appellee was hurt, he was able to do hard work on the farm. It was five or six weeks after the injury before he tried to do any work. He then attempted to pile some brush, and his shoulder flew out of place. His brother helped him to put it back, and he did no more work for a long time. Three or four months later he was holding a team, which jerked back, and again his shoulder was thrown out of place. Another brother helped him to set it again. Whenever it got out of place he suffered a great deal, and he had not been able to do any heavy work. Appellee's evidence was corroborated by his father and mother and his two brothers. On the other hand, Dr. W. B. O'Bannon testified that in a case of dislocated shoulder there was a good deal of soreness, and, where there was a complete dislocation, it was from three to six weeks before one could go ahead with his regular work. As a general rule, a person has a good useful joint, unless there is a pretty bad tear of the ligament. In his opinion, a man could not set a dislocated shoulder himself if there was a complete dislocation, but could do it if there was a partial dislocation. If there was a damage to the ligament, it is easier to dislocate the shoulder the second time than it was the first. He had seen numbers who had never had any trouble at all, and he had seen a few where the bone was easy to slip out again. In view of the positive evidence as to the subsequent dislocation coupled with the further evidence that appellee was unable to do any heavy work without

a recurrence of the injury and additional suffering, it cannot be said that the verdict of $1,500 is excessive.

Judgment affirmed.