# Behemoth Coal Co. v. Helton.

June 10, 1949.

Rehearing denied September 30, 1949.

Murray L. Brown, Robert B. Bird and J. C. Bird for appellant.

Joe S. Feather and Herschel M. Sutton for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

Appellee suffered personal injuries when a coal truck being operated by him on a loading ramp ran off the side and turned over. A jury returned a verdict for $3,400 in his favor. On this appeal appellant's principal contention is that it was entitled to a directed verdict on two grounds: (1) appellee failed to prove negligence, and (2) he was guilty of contributory negligence as a matter of law.

The ramp involved had been recently constructed by appellant and was used by trucks for the purpose of delivering coal to railroad cars on a spur track. The trucks backed up this ramp from the ground level, and in doing so it was necessary for the drivers to make a sharp left hand turn after coming onto the structure. The flooring was made of heavy oak lumber, and there is no evidence it was defective. Part of it extended beyond the outside supporting stringers, and above them, running lengthwise of the ramp, guide or guard rails 3 inches wide and

6 inches high, made of oak lumber, were fastened with nails. These were reinforced by other pieces of timber 4 or 5 feet apart nailed to the flooring outside the rails.

The accident occurred when appellee, operating a truck with a gross weight of approximately 14,000 pounds, made the left hand turn and his left rear wheel struck the railing. He testified that it and part of the flooring broke off, thereby precipitating the truck off the ramp. It is not clear from the evidence whether this part of the railing actually broke into or became unfastened, permitting the weight of the truck to come down on the unsupported flooring outside the stringer. However, there was substantial evidence this rail was not sufficiently sturdy to withstand the pressure when the truck wheel came in contact with it.

Appellant's theory is that this railing was simply a marker or guide to define the limits of the safe driving area on the ramp. The rails were laid about 9 feet apart, and trucks were supposed to stay between them. As the truck operated by appellee was approximately 7½ feet in width, there was little free space between them and the truck wheels. Appellee's theory is that the rails were more than guide rails, and at least appeared to be *guard* rails which should have been sufficiently strong to keep trucks from angling off the ramp.

While of course appellant would not be under a duty to construct a barrier sufficient to resist the pressure of a heavily loaded truck under any circumstances, it seems obvious it could anticipate that trucks making this sharp turn in reverse on the narrow driveway would, at least occasionally, run against this railing.

Appellant relies upon the principle applied in the case of Cincinnati, N. O. & T. P. Ry. Co. v. Falconbury, 274 Ky. 518, 119 S. W. 2d 563. There the driver of an automobile ran off a railroad bridge after striking the end of a sill and crashing through the bannisters or guard rails. We held that the latter were erected for the purpose of *notification* rather than *fortification,* and the fact that they were insufficient to stop an automobile which struck them did not make out a case of negligence against the defendant company. The facts in the present case are clearly distinguishable in view of the different

type of structure, the nature of its use, and the apparent protective purpose of the rails.

The photographs of the ramp involved exhibit clearly the possible dangers incident to its sole designed use. It appears that guard rails were necessary, and we think appellant acknowledged this necessity by constructing them out of heavy lumber. If they were only to constitute guides, it would have been much cheaper and just as effective for that purpose to have painted white lines on the flooring. The evidence was sufficient to induce a reasonable conviction that these rails were, as one of appellant's own witnesses testified, to ''check'' the trucks if their wheels came up against them.

As a general rule, where guard rails are erected and maintained for the purpose of making a bridge or similar structure reasonably safe for ordinary travel, they should be sufficiently strong to be effective for that purpose. 8 Am. Jur., Bridges, Sections 40, 41. Cincinnati, N. O. & T. P. Ry. Co. v. Dungan, 162 Ky. 36, 171 S. W. 1007. A jury would be justified in finding that appellant failed to maintain a railing reasonably adequate to serve the protective purpose for which it was apparently designed. Such failure would constitute negligence, and appellant was not entitled to a directed verdict on this ground.

What we have said above likewise answers appellant's contention that appellee was guilty of contributory negligence as a matter of law. The rails were constructed of heavy timber, were reinforced, and gave the appearance of sufficient strength to check the progress of a coal truck running against them. It is true appellee was looking out the left door of his cab and observed his left rear wheel approaching the railing. Perhaps he should have stopped sooner, but he testified the rail broke off immediately when his wheel came in contact with it and he thought it was strong enough to hold the truck. The jury could certainly have concluded that appellee was contributorily negligent, but it likewise could justifiably find, as it did, that his actions did not constitute a failure to exercise reasonable care. The issue was not one of law but one of fact, and was properly submitted.

Appellant complains of one of the instructions which authorized appellee's recovery for the permanent im-

pairment of his power to earn money. The objection is based on the fact that appellee was a minor, 17 years of age, and the instruction did not limit his recovery to the loss of earning power *after he reached the age of 21 years*.

KRS 405.010 declares that the father and mother of a minor child are equally entitled to his earnings, and it is insisted appellee could not recover damages for which his parents have a cause of action. However, the right of the parents may be waived where they have notice of the minor's suit and participate in it without asserting an independent right of recovery. Kentucky Service Co. v. Miracle, 246 Ky. 797, 56 S. W. 2d 521. In the present case appellee's mother clearly waived her rights by bringing the suit as his next friend and by testifying in the case. There is no showing in the record that appellee has a living father. If he is dead, or has abandoned appellee, or been deprived of his custody, or refuses to sue, the mother could alone assert the parents' cause of action under the above cited statute. Since she has waived her claim for earnings, and there is no evidence indicating appellee's father has a right of action, we will not presume the existence of such right as the sole basis for reversing this judgment.

Appellant raises a general objection to other instructions, but having carefully considered them, we believe they properly submitted the issues to the jury.

For the reasons stated, the judgment is affirmed.