484 P.2d 1177

Dina SKOLLINGSBERG, Guardian Ad Litem for Gunnar Skollingsberg, Plaintiff and Respondent,

v.

Paul BROOKOVER and General Electric Company, a corporation, Defendants and Appellants.

No. 12035.

Supreme Court of Utah.

May 10, 1971.

Harold G. Christensen and Raymond M. Berry, of Worsley, Snow & Christensen, Salt Lake City, for defendants and appellants.

Lorin N. Pace, Walter P. Faber, Jr., Salt Lake City, for plaintiffs and respondents.

CROCKETT, Justice:

Defendants appeal from a jury verdict and judgment thereon awarding $18,000 general and $6,811 special damages to the plaintiff, Dina Skollingsberg, mother and guardian ad litem for her 16-year-old son, Gunnar, for a broken leg and other injuries he suffered in a collision between his motorcycle and a truck of defendant General Electric driven by defendant Paul Brookover; and for a subsequent refracturing of the same leg five months later by a fall on his home stairway.

The facts concerning the original collision and injuries are not in contest on this appeal. The incident occurred on July 25, 1965. Gunnar was motorcycling south on 8th East at about 3100 South in Salt Lake City; Paul Brookover was driving the defendant's truck northward. He made a turn to his left and toward the west, when the vehicles collided. Gunnar suffered numerous injuries the permanent aspects of which were the breaking of his leg (now left shorter than the other) and a crippling deprivation of use in his left hand because of injuries to its nerves and tendons. The verdict was for $18,000 general damages, $4,291 medical and hospital expenses, and $2,520 for loss of earnings.

Defendants contend that the action was brought by the wrong party plaintiff, Gunnar's mother instead of his father;[1] and particularly that the awards for special damages of medical expenses and. loss of earnings could not properly be awarded to the plaintiff because they belonged to his father.

The general rule is that such an action should be brought by the father.[2] But as will appear from our discussion herein, we see no reason why that rule should apply with such rigidity in this case as to provide protection to those the jury has found responsible for causing injuries to the plaintiff, nor to prevent his recovery of damages they have found justly due him. In approaching that problem there are certain thoughts to be borne in mind. The purpose and the justification for rules is to facilitate procedure and to effectuate justice. They are not intended to exist as mere abstractions in a vacuum, and should not be applied in circumstances where there is no basis in reason or justice for doing so. Much less so when the real ef-

---

1. This is explained on the basis that the father, an immigrant, has somewhat limited use of English, and therefore business matters are handled mainly by the mother.

2. Ostertag v. Lamont, 9 Utah 2d 130, 339 P.2d 1022; See Anno. 32 A.L.R.2d 1060, "What items of damages on account of personal injury to an infant belong to him, and what to the parent."

fect would be to obstruct or to defeat the ends of justice. Moreover, a party ordinarily has no standing to challenge non-compliance with a rule unless he is in some manner adversely affected thereby.

One of the primary reasons why it has been thought that the father is the proper party to bring such an action is that historically it has been the father's responsibility to provide the necessities for the family including their medical expenses, and that for this reason he was entitled to recover for such expenses and for earnings due the children as "the real party in interest." [3] Under our law it is not true that this responsibility for support rests only upon the father. It is also upon the mother.[4] Thus the reason for the idea that the right to bring such an action belongs to the father is not so persuasive as formerly. Insofar as the defendants are concerned, what they are entitled to is the assurance that if they meet and respond to this suit, they shall not be harassed by further litigation. Respected authorities with which we are in accord have reasoned that due to the natural concern a father has for the welfare of his child, it is only reasonable to assume that he has knowledge of something so important as a lawsuit such as this

and that he gives his approval to it; and have held that in such circumstances he would be estopped from any further action.[5] This is true a fortiori, where, as here, he has testified in the lawsuit.

In neither our statutes nor our rules of procedure do we find any mandate that such an action *must* be brought by the father. The defendants place reliance on this wording of Sec. 78–11–6, U.C.A. 1953:

> Injury or death of child—When parent or guardian may sue. * * * a father, or in case of his death or desertion of his family, the mother, *may* maintain an action for the death or injury of a minor child when such injury or death is caused by the wrongful act or neglect of another; * * *.

It will be noted that this statute is in its terms neither compulsory nor exclusive. It is permissive in allowing a father or, in the contingency mentioned, the mother, to maintain such an action. Under the procedure authorized by that statute, the suit would be in the parent's own name and right, and not as guardian. However, that is not what was done in this case.

There is an alternative procedure authorized by Rule 17(b), U.R.C.P. It provides

3. Anno., 32 A.L.R.2d 1060; Rule 17(a), U.R.C.P.

4. Sec. 30–2–9, U.C.A.1953.

5. 32 A.L.R.2d 1083; Girard v. Irvine, 97 Cal.App. 377, 275 P. 840; McHugh v. Hirsch Clothing Co., 308 Ill.App. 272, 31 N.E.2d 326; Behemoth Coal Co. v. Helton, 310 Ky. 810, 222 S.W.2d 845; Kentucky Service Co. v. Miracle, 246 Ky. 797, 56 S.W.2d 521.

for the appointment of a guardian ad litem "* * * in any case when it is deemed by the court * * * expedient to represent the infant * * * notwithstanding he may have a general guardian * * *." When this procedure is employed the guardian ad litem must be approved by and appointed by the court. Such a guardian, whoever it may be, is subject to the control of the court. He can adequately represent the interests of the minor and give proper acquittance to a defendant against whom recovery may be had. It should be further observed that in this instance the defendants have no legitimate complaint as to the party plaintiff because the trial court took care to safeguard their interest by providing expressly in the judgment that the mother as guardian ad litem takes as trustee for the benefit of the father.

 With respect to the second aspect of this case we have reached a different conclusion. It relates to a separable part of the jury verdict which awarded damages for another fall and consequent injuries suffered by the plaintiff about five months after the first accident. As to it, the jury answered thus:

II. What is the amount of damages, if any, you will assess for plaintiff because of the second accident?

| | | |
|---|---|---|
| A. | General | $ – 0 – |
| B. | Loss of Earnings | $ 1,820.00 |
| C. | Medical Expenses | $ 590.00 |

Prior to this latter occurrence the cast had been removed and Gunnar was walking without crutches. In carrying into his home and down the basement what is referred to as "a large box," he made a misstep on the stair with his right foot. This caused him to "sit down" on the previously injured left leg. It refractured along the line of the original break. Plaintiff's theory for placing the blame on the defendant's original negligence is that this later fall resulted because of weakness and reduced mobility in his left leg which had been fractured in the original accident.

It is not to be doubted that under some circumstances, where there is proper proof of proximate causation, remoteness of time alone will not ordinarily prevent imputation of liability for a subsequent injury to a prior act of negligence.[6] But it is the plaintiff's burden to establish that such prior negligence was the proximate cause of the subsequent injury. This entails the requirement that the subsequent injury be one which might reasonably be expected to follow from the original act and injury;[7] and without any new and independent, unforeseeable occurrence which effectively

6. This problem considered and so ruled in Farnon v. Silver King Coalition Mines Co., 50 Utah 295, 167 P. 675, 9 A.L.R. 248; Wilder v. Gen. Motorcycle Sales Co., 232 Mass. 305, 122 N.E. 319.

7. See Stone v. Union Pac. R. Co., 32 Utah 185, 89 P. 715.

caused the second injury. If there is such a later causative occurrence, it is deemed to be the intervening, efficient and therefore the proximate cause of such injury.[8]

We revert to consider the second accident in the light of what has just been said: The plaintiff himself was best aware of whatever weakness he had due to his first injury. Nevertheless, with wet shoes on, he undertook to carry the "large box" which impaired his vision, onto the stairway when he made the misstep and fell. It is our opinion that under those circumstances there is no reasonable basis upon which it could be found that his second fall was proximately caused by the defendant's prior negligence; and conversely, that the only reasonable deduction to be drawn was that the plaintiff's own conduct was an independent, intervening, and therefore the proximate cause of the later injury.[9]

The foregoing conclusion makes it necessary to deduct from the judgment the items of special damage attributable to the second accident: i. e., loss of earnings of $1,820, and the medical expense of $590. In other particulars the judgment is affirmed. The parties to bear their own costs.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

8. See Restatement of Torts, Sec. 447; and see discussion in Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287, and authorities cited therein.

9. For similar cases involving reinjury, see Braunstein v. McKenney, 73 So.2d 852 (Fla.) ; Armstrong v. Bergeron, 104 N.H. 85, 178 A.2d 293 ; Waggoner v. Marquette Casualty Co., 181 So.2d 475 (La.App.).