SANDRA VILLAMIL *et al.*, Indiv. and as Special Adm'rs of the Estate of Marie Villamil, Deceased, Plaintiffs-Appellants, v. ELMHURST MEMORIAL HOSPITAL *et al.*, Defendants-Appellees.

First District (5th Division)   No. 87—1280

Opinion filed October 14, 1988.

Robert F. Lisco, of Lisco & Field, of Chicago (Sidney Z. Karasik, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Jennifer A. Midlock, and Bruce L. Carmen, of counsel), for appellee Elmhurst Memorial Hospital.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs, Sandra and Jorge Villamil, appeal from an order of the circuit court of Cook County dismissing two counts of their com-

plaint filed against defendants, Elmhurst Memorial Hospital and John A. Benages, M.D., which alleged negligent infliction of emotional distress arising out of the death of their daughter, Marie Villamil, shortly after her birth. For the reasons set forth below, we affirm.

On September 16, 1985, plaintiffs went to the emergency room of Elmhurst Memorial Hospital; Sandra was in "active premature labor" at that time. Subsequently, while Sandra was giving "spontaneous birth" to Marie, Dr. Benages, the attending physician, momentarily turned away from the delivery table and Marie fell to the floor on her head in the presence of Sandra and Jorge, suffering severe injuries which resulted in her death on September 17.

Plaintiffs filed a six-count complaint against defendants. Counts I through IV, alleging wrongful death, negligence, a Survival Act (Ill. Rev. Stat. 1985, ch. 110½, par. 27—6) claim, and negligence based on *res ipsa loquitur*, are not at issue here. Counts V and VI alleged that Sandra and Jorge, respectively, suffered "severe and [*sic*] emotional and mental distress" as a result of witnessing the injury to Marie. Defendant Benages did not appear or answer and an order of default was entered against him. Defendant Elmhurst Memorial Hospital filed its answer denying the allegations of counts I through IV and moved to dismiss counts V and VI. Subsequently, the trial court dismissed both counts for failure to state a cause of action for negligent infliction of emotional distress, and this appeal followed.

■ In Illinois, recovery for negligently caused emotional distress suffered by a bystander who witnesses the injury of another is governed by satisfaction of the elements comprising the "zone-of-physical-danger" rule enunciated in *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1. Under the rule, a bystander must be in the zone of physical danger to the direct victim created by a defendant's negligent conduct, have a reasonable fear for his own safety based on a high risk to him of physical impact, and show physical injury or illness as a result of the emotional distress caused by the defendant's negligence.

In the instant case, Sandra argues in her appellate brief that she was in the zone of physical danger and had a reasonable fear of falling off the delivery table after her baby fell. She also alleged in her complaint and on appeal that as a result of her baby's fall she has suffered severe emotional and mental distress based on her observance of "such severe and permanent injuries forcibly inflicted upon her newborn child" and "she will continue to suffer in the future and she has been forced to pay large sums of money for doctor bills,

medicine, nursing care and treatment in and about endeavoring to be cured of the *injuries inflicted upon her.*" (Emphasis added.)

■ We first observe that Sandra did not allege in count V of the complaint that she feared for her own safety because she might suffer a fall as did her child; she makes this contention for the first time on appeal. Nor does count V contain any allegation that Sandra experienced *physical injury* resulting from her emotional distress. Throughout the complaint she alleges solely *emotional distress* and *mental anguish* and, accordingly, we must assume that the "injuries inflicted upon her" consist solely of emotional distress and mental anguish. Count V thus fails to satisfy the *Rickey* requirements in stating a cause of action for negligent infliction of emotional distress.

■ We also find Sandra's alternative argument, that she stated a cause of action for "mental suffering, independently of the bystander/zone of physical danger analysis," without merit. Specifically, Sandra cites to the case law of two other jurisdictions which allowed recovery for emotional distress arising out of the death or injury to a newborn child. (See *Haught v. Maceluch* (5th Cir. 1982), 681 F.2d 291; *Wargelin v. Sisters of Mercy Health Corp.* (1986), 149 Mich. 75, 385 N.W.2d 732.) In neither jurisdiction, as defendant Elmhurst Memorial Hospital argues, is the reasonable fear for one's own safety an element of a claim for negligent infliction of emotional distress as is required in Illinois pursuant to *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1. Instead, both jurisdictions appear to follow the "foreseeability" test set forth in *Dillon v. Legg* (1968), 68 Cal. 2d 728, 441 P.2d 919, 69 Cal. Rptr. 72, which only requires a showing of closeness in time, place, and relationship by a plaintiff to the injured victim causing a direct *emotional* impact upon the plaintiff.

■ In *Rickey*, our supreme court expressly rejected the *Dillon* standard and instead adopted the zone-of-physical-danger rule requiring, among other things, that a plaintiff show that he was in reasonable fear for his own safety and suffered physical injury or illness as a result of the emotional distress caused by a defendant's negligence. The basis of the *Rickey* court's decision in rejecting the *Dillon* standard rested upon its recognition of past considerations in denying recovery for purely emotional distress, *i.e.*, the door would be opened for fraudulent claims, damages would be difficult to ascertain and measure, emotional injuries are hardly foreseeable, and frivolous litigation would be encouraged. Accordingly, since "[i]t is fundamental that appellate courts are without authority to overrule the

supreme court or to modify its decisions" (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 551, 457 N.E.2d 1, quoting *Beagley v. Andel* (1978), 58 Ill. App. 3d 588, 591, 374 N.E.2d 929), *Rickey* is dispositive of this issue.

■ We also reject Sandra's argument that "mismanaged childbirth" situations are unique and the *Rickey* rule should be inapplicable in that the mother is a *direct victim* in her own right given the "unitary relationship" between mother and child in childbirth and, accordingly, should recover for "negligently inflicted *mental suffering*." Sandra again cites to authority from other jurisdictions in support of this contention.

We find it unnecessary to discuss other jurisdictional law in light of prevailing Illinois law to the contrary. For example, in *Henry v. St. John's Hospital* (1987), 159 Ill. App. 3d 716, 512 N.E.2d 1042, the plaintiff mother of a child alleged that her child was born with cerebral palsy as a result of improper administration of a spinal anesthetic she received. In response to a motion to dismiss her negligent infliction of emotional distress count against the defendant, the plaintiff argued that she was a *direct victim* of the defendant's negligence and that *Rickey* therefore did not apply. The *Henry* court implicitly rejected this argument in dismissing the plaintiff's complaint for failure to allege a physical manifestation of her emotional distress as required by *Rickey*. Similarly, in *Hunt v. Chettri* (1987), 158 Ill. App. 3d 76, 510 N.E.2d 1324, *appeal denied* (1987), 116 Ill. 2d 555, the plaintiff alleged negligent infliction of emotional distress against her obstetrician as a result of the stillbirth of her child. The *Hunt* court, like the *Henry* court, found that the plaintiff's complaint failed to allege a physical manifestation resulting from the emotional distress suffered by her and further expressly stated that it did not believe that the unusual facts presented in the case fell into the zone-of-physical-danger rule as contemplated by *Rickey*. (See also *Whetham v. Bismarck Hospital* (N.D. 1972), 197 N.W.2d 678 (cited with approval by the *Rickey* court, where it was held that the zone-of-physical-danger standard did not provide a cause of action for the negligent infliction of emotional distress to parents of a child who was dropped by an employee of the defendant hospital).) We therefore reject Sandra's "direct victim" argument.

■ Based on the application of the zone-of-physical-danger rule, we also affirm the dismissal of count VI, which alleged negligent infliction of emotional distress suffered by Jorge but failed to allege that he had a reasonable fear for his own safety or that he suffered an illness or injury resulting from his emotional distress.

■ Finally, in recognizing the undeniably tragic nature of the factual situation here, we find it appropriate to note that notwithstanding the seeming harshness of application of the zone-of-physical-danger rule, a remedy exists to compensate plaintiffs for their purely emotional distress, *i.e.*, an action under the Wrongful Death Act (the Act) (Ill. Rev. Stat. 1985, ch. 70, par. 1 *et seq.*), which in fact plaintiffs have claimed in count I of their complaint. Under the Act, a parent is presumed to have suffered pecuniary injury in the loss of a child's society. Loss of a child's society has been held to encompass consideration of the deprivation of companionship, guidance, security, love, and affection between a parent and child in awarding damages. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) Although the emotional distress suffered by parents as a result of the loss of a child is incalculable, damages for that emotional distress are indirectly recoverable under the presumption of their deprivation of the companionship, love, and affection of their child and, under the circumstances here, is an unarguable reality, requiring no showing of a physical injury resulting from their emotional distress. See *Hunt v. Chettri* (1987), 158 Ill. App. 3d 76, 79, 510 N.E.2d 1324, *appeal denied* (1987), 116 Ill. 2d 555 (where a child is born and lives only momentarily, the initial bonding which takes place at birth cannot be easily dismissed—the length, intensity and quality of the parent-child relationship are determinative of the loss experienced by the parent and, therefore, birth is a proper point at which to begin to measure the loss of a child's society).

For the foregoing reasons, therefore, the judgment of the trial court dismissing counts V and VI of plaintiffs' complaint is affirmed.

Affirmed.

LORENZ, P.J., and PINCHAM, J., concur.