**Daniel BOUCHER, By and Through his Guardian, Torla BOUCHER, an Individual, and James Boucher, an Individual, Plaintiffs and Appellants,**

v.

**DIXIE MEDICAL CENTER, A DIVISION OF IHC HOSPITALS, INC., Edward Foxley, M.D., David Moore, M.D., Kathy Marshall, R.N., and Does 1 Through 20, Inclusive, Defendants and Appellees.**

No. 900476.

Supreme Court of Utah.

Aug. 21, 1992.

Thomas V. Rasmussen, Salt Lake City and Irwin M. Zalkin, San Diego, Cal., for the Bouchers.

Charles W. Dahlquist, Larry R. White, and Merrill F. Nelson, Salt Lake City, for Dixie Medical Center.

Larry R. Laycock and David W. Slagle, Salt Lake City, for Dr. David Moore.

HALL, Chief Justice:

Plaintiffs Torla and James Boucher appeal an order of the fifth district court

dismissing their claims of negligent infliction of emotional distress and loss of filial consortium. We affirm.

■ The trial court dismissed these claims pursuant to Utah Rule of Civil Procedure 12(b)(6), ruling that the Bouchers failed to state a claim upon which relief can be granted. In reviewing a rule 12(b)(6) dismissal, we view the complaint and all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiffs.[1] The facts are recited accordingly.[2]

Daniel Boucher, the eighteen-year-old son of James and Torla Boucher, was admitted into Dixie Medical Center with a severely injured right hand. He underwent surgery and lapsed into a coma during the post-operative recovery period. He remained in a coma for ten days before awakening as a severely brain-damaged quadriplegic who will need extensive care for the rest of his life. The Bouchers were present at the hospital and observed their son's condition both before and after he awoke from the coma.

Thereafter, the Bouchers initiated this suit. The complaint, in addition to alleging that Daniel Boucher may recover for his injuries, alleges that James and Torla Boucher may recover individually under theories of negligent infliction of emotional distress and loss of filial consortium. The trial court dismissed these claims on the grounds that Utah does not allow recovery for loss of filial consortium and that Utah does not allow recovery for negligent infliction of emotional distress when the plaintiffs do not claim that they were within the zone of danger created by the defendants' negligence.

The trial court certified these rulings as final decisions pursuant to rule 54(b) of the Utah Rules of Civil Procedure. This certification was proper because the ruling dis-

---

1. *See, e.g., O'Neal v. Division of Family Servs.,* 821 P.2d 1139, 1140 (Utah 1991); *Myers v. McDonald,* 635 P.2d 84, 85 & n. 1 (Utah 1981).

2. *See, e.g., O'Neal,* 821 P.2d at 1140; *Myers,* 635 P.2d at 85 & n. 1.

missed all of James and Torla Bouchers' claims.[3]

This case presents two issues on appeal. First, did the Bouchers allege sufficient facts to state a claim of negligent infliction of emotional distress, as this claim is defined in Utah? Second, does Utah recognize a claim of loss of filial consortium that allows parents to recover for the loss of their adult child's society and affection caused by the child's nonfatal injuries? While these are two distinct causes of action, a common factual thread underlies both claims. Under both theories, the Bouchers seek recovery for harm caused solely by defendants' alleged negligence which resulted in injury to a third party. Such claims involve the competing interests of compensating all those who have been harmed by a tort-feasor and setting rational and workable limits to liability.[4] With these interests in mind, we examine the issues on appeal.

## I

In their first claim, the Bouchers seek recovery for the emotional distress and shock they suffered upon learning of their son's condition and observing him in the hospital. This court first recognized the claim of negligent infliction of emotional distress in *Johnson v. Rogers.*[5] In *Johnson,* after surveying the various tests that courts in this country have developed to determine liability for the negligent infliction of emotional distress, we adopted the position taken by section 313 of the Restatement (Second) of Torts (1965), as explained in the comments accompanying that section.[6] Section 313's approach, also referred to as the zone of danger approach, allows recovery to plaintiffs who suffer emotional distress because of another's negligence, though they do not suffer any physical impact, only if the plaintiffs are placed in actual physical peril and fear for their own safety.[7] *Johnson,* therefore, does not provide recovery to plaintiffs who are not within the zone of danger created by a defendant's negligence.[8]

The Bouchers do not claim that they can recover under the restatement's test. Rather, they argue that we should abandon the zone of danger rule in favor of a more expansive approach developed by the California courts. Specifically, they urge this court to adopt California's direct victim approach, as set out in *Marlene F. v. Affiliated Psychiatric Medical Clinic,*[9] and Cali-

---

3. *See King v. Searle Pharmaceuticals,* 832 P.2d 858 (Utah 1992).

4. *See generally Johnson v. Rogers,* 763 P.2d 771, 785 (Utah 1988); *Hackford v. Utah Power & Light Co.,* 740 P.2d 1281, 1286 (Utah 1987).

5. 763 P.2d 771 (Utah 1988).

6. *Id.* at 785. Section 313 of the Restatement (Second) of Torts provides:

    (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
    (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
    (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.
    (2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other.

For a more in-depth discussion of section 313, see *Hansen v. Sea Ray Boats,* 830 P.2d 236 (Utah 1992).

7. *Hansen,* 830 P.2d at 240; *see also Johnson,* 763 P.2d at 780–82 (Durham, J.); *Dobelle v. National R.R. Passenger Corp.,* 628 F.Supp. 1518, 1525 (S.D.N.Y.1986).

8. *Hansen,* 830 P.2d at 240–41; *see also Johnson,* 763 P.2d at 780–82; *Dobelle,* 628 F.Supp. at 1525.

    Indeed, several courts have denied recovery under the zone of danger test for plaintiffs who suffered emotional distress because medical malpractice resulted in injury to a family member. *See, e.g., Owens v. Children's Memorial Hosp.,* 480 F.2d 465, 467 (8th Cir.1973); *Maloney v. Conroy,* 208 Conn. 392, 545 A.2d 1059, 1062–64 (1988); *Villamil v. Elmhurst Memorial Hosp.,* 175 Ill.App.3d 668, 125 Ill.Dec. 105, 106–107, 529 N.E.2d 1181, 1182–83 (1988).

9. 48 Cal.3d 583, 257 Cal.Rptr. 98, 770 P.2d 278 (1989); *see also Anisodon v. Mercy Hosp. & Medical Center,* 6 Cal.App.4th 164, 285 Cal.Rptr. 539 (Ct.App.), *review granted,* 2 Cal.Rptr.2d 1, 819 P.2d 842 (Cal.1991). We note parenthetically that under the facts of *Marlene F.,* theories of

fornia's bystander approach, as set out in *Thing v. La Chusa.*[10] Both approaches are modifications of the *Dillon* rule,[11] a rule that we reviewed and rejected in *Johnson.*[12]

In urging us to abandon the zone of danger test, the Bouchers cite language in *Johnson* which suggests that we will consider other approaches in the future.[13] However, after the present case was argued, we decided *Hansen v. Sea Ray Boats,*[14] wherein we unequivocally adopted the zone of danger rule, rejected the *Dillon* approach, and rejected any approach that allows plaintiffs who are not within the zone of danger to recover for emotional distress caused by witnessing another's injury.[15]

In the present case, we need not completely restate our reasoning for adopting the restatement's position. We note, however, that *Hansen* is based in part on the notion that allowing recovery to all those who suffer emotional distress because of another's injury has the potential of allowing unlimited recovery.[16] The restatement's approach, by limiting recovery to

plaintiffs who were actually placed in physical danger and feared for their own safety, sets rational and workable limits on liability and "comports with the basic tort principle that a person may not recover for vicarious injuries."[17] The approaches that allow recovery for plaintiffs who are not within the zone of danger have not developed rational limits on liability. Rather, these approaches have led to confusion, inconsistent application, and anomalous results.[18]

■ By reason of our holding in *Hansen,* we need not undertake an in-depth analysis of the Bouchers' claim.[19] The Bouchers did not allege that they were in the zone of danger; therefore, they did not state a claim of negligent infliction of emotional distress, as this claim is defined in Utah.

## II

The Bouchers' second claim presents an issue of first impression in this court: Should Utah judicially adopt a cause of action that allows the parents of a tortious-

recovery other than negligent infliction of emotional distress may have been available. *See Marlene F.,* 257 Cal.Rptr. at 103–108, 770 P.2d at 283–88 (Arguelles, J., concurring), 257 Cal.Rptr. at 108–09, 770 P.2d at 288–89 (Eagleson, J., concurring).

10. 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989).

11. *See Dillon v. Leg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 74–75, 441 P.2d 912, 914–15 (1968).

12. *Johnson,* 763 P.2d at 780–85; *see also Hansen,* 830 P.2d at 241–42.

13. *Johnson,* 763 P.2d at 785.

14. 830 P.2d 236 (Utah 1992).

15. *Hansen,* 830 P.2d at 241.

16. *Id.* at 241–42.

17. *Id.* at 241. The zone of danger approach has been criticized as leading to arbitrary results. Generally, these criticisms center on factual situations similar to the one presented in *Dillon. See Dillon,* 69 Cal.Rptr. at 74–75, 441 P.2d at 914–15. In *Dillon,* a child was struck and killed by a car. The victim's sister may have been within the zone of danger at the time of the accident and therefore could state a claim of

negligent infliction of emotional distress under section 313 of the restatement. The victim's mother was standing twenty feet away and therefore could not recover under the restatement's approach. The majority in *Dillon* reasoned that under these facts, allowing the sister to proceed with her claim and not the mother would create an anomalous result. *Id.* 69 Cal. Rptr. at 75, 441 P.2d at 915.

However, under section 313 neither the mother nor the sister could recover for emotional distress because she suffered shock and apprehension concerning the victim's death. *See Hansen,* 830 P.2d at 241; Restatement (Second) of Torts § 313 cmt. d (1965). The sister, who was in danger, could recover if she suffered emotional distress concerning her own safety. The mother, who was not in danger, could not recover. *See Hansen,* 830 P.2d at 841; Restatement (Second) of Torts § 313 cmt. d (1965). Viewed in this light, the result is not arbitrary.

18. *See Hansen,* 830 P.2d at 241–42; *see also Thing,* 257 Cal.Rptr. at 876–81, 771 P.2d at 825–30 (majority opinion), 257 Cal.Rptr. at 882, 771 P.2d at 831 (Kaufman, J., concurring).

19. We do note, however, that it is not clear that the Bouchers stated a claim under either the approach in *Marlene F.* or the approach in *Thing.*

ly injured adult child to recover for loss of the child's consortium?

▮ Loss of consortium claims are based on the recognition of a legally protected interest in personal relationships.[20] Accordingly, if one member of the relationship is tortiously injured the noninjured party has a cause of action to recover for damage to their relational interest, i.e., the loss of the injured party's " 'company, society, co-operation, [and] affection.' "[21] In the instant case, we are asked to recognize a right of recovery based on the relationship between parents and their adult son. For the reasons set forth below, we decline to adopt such an approach.

A review of the case law reveals little support for the adoption of a cause of action for the loss of filial consortium. At common law, the father of a tortiously injured child did have a cause of action to recover the value of the child's loss of services and the medical expenses incurred on the child's behalf.[22] However, this action was based on a father's right to his minor children's services and a father's obligation to pay his minor children's medical expenses.[23] This right of recovery, therefore, did not extend beyond these two elements of damages, nor did it extend to injuries involving adult or emancipated children.[24]

These common law principles have undergone some modification.[25] However, no widely accepted development has occurred that allows recovery in cases involving adult children, nor has any widely accepted development occurred that allows recovery for the loss of a child's society and affection.

Indeed, the majority of jurisdictions that have addressed the issue have declined to recognize a cause of action for loss of filial consortium.[26] While a minority of jurisdictions do recognize this claim,[27] no clear

**20.** *Hackford v. Utah Power & Light Co.,* 740 P.2d 1281, 1284 (Utah 1987).

**21.** *Id.* at 1290 (Utah 1987) (Durham, J., dissenting) (quoting *Black's Law Dictionary* 280 (5th ed. 1979)).

**22.** *See Jones,* 170 Eng.Rep. 334; W. Page Keaton et al., *Prosser and Keaton on the Law of Torts* § 125, at 934 (5th ed. 1984) [hereinafter *Prosser*]; *see also Skollingsberg v. Brookover,* 484 P.2d 1177, 1178 (Utah 1971); *Ostertag v. LaMont,* 9 Utah 2d 130, 339 P.2d 1022, 1026 (1959); *Siciliano v. Capital City Shows,* 124 N.H. 719, 475 A.2d 19, 21 (1984).

**23.** *See Jones v. Brown,* 170 Eng.Rep. 334 (1794); *Prosser* at 934; *see also Skollingsberg,* 484 P.2d at 1178–79; *Ostertag,* 339 P.2d at 1026; *Siciliano,* 475 A.2d at 21.

**24.** *See Baxter v. Superior Court of Los Angeles County,* 19 Cal.3d 461, 138 Cal.Rptr. 315, 318 & n. 2, 563 P.2d 871, 874 & n. 2 (Cal.1977); *McGarr v. National & Providence Worsted Mills,* 24 R.I. 447, 53 A. 320, 325–26 (1902); *Prosser* at 935.

**25.** The majority of modern courts that follow this approach allow either parent to recover. *Skollingsberg,* 484 P.2d at 1178–79; *see also* Restatement (Second) of Torts § 703 (1976).

**26.** *See, e.g., Doe "A" v. Special School Dist.,* 637 F.Supp. 1138, 1146 (E.D.Mo.1986) (filial consortium claim disallowed in 42 U.S.C. § 1983 action); *Toups v. Du–Mar Marine Contractors, Inc.,* 644 F.Supp. 475, 477 (E.D.La.1985) (filial consortium claim disallowed in Jones Act negligence claim); *Smith v. Richardson,* 277 Ala. 389, 171 So.2d 96, 100 (1965) (no recovery beyond loss of services and medical expenses); *Baxter,* 138 Cal.Rptr. at 318, 563 P.2d at 874 (no recovery beyond loss of services and medical expenses); *Butler v. Chrestman,* 264 So.2d 812, 816–17 (Miss.1972) (no recovery for loss of child's consortium); *Siciliano,* 475 A.2d at 21–24 (recovery based only on parent's support obligation); *Brennan v. Biber,* 93 N.J.Super. 351, 225 A.2d 742, 752 (1966) (no recovery beyond loss of services and medical expenses), *aff'd,* 99 N.J.Super. 247, 239 A.2d 261 (1968); *Wilson v. Galt,* 100 N.M. 227, 668 P.2d 1104, 1112 (Ct. App.) (no recovery for loss of filial consortium), *cert. quashed,* 100 N.M. 192, 668 P.2d 308 (1983); *Gilbert v. Stanton Brewery, Inc.,* 295 N.Y. 270, 67 N.E.2d 155, 156 (1946) (no recovery for loss of filial consortium); *Beyer v. Murray,* 33 A.D.2d 246, 306 N.Y.S.2d 619, 622 (N.Y.Ct. App.1970) (no recovery beyond loss of services and medical expenses); *Quinn v. Pittsburgh,* 243 Pa. 521, 90 A. 353, 354 (1914) (no recovery for loss of filial consortium); *McGarr,* 53 A. at 325–26 (no recovery beyond loss of services and medical expenses); *see also Prosser* at 934.

**27.** *See Reben v. Ely,* 146 Ariz. 309, 705 P.2d 1360, 1363 (Ariz.Ct.App.1985); *Yordon v. Savage,* 279 So.2d 844, 846 (Fla.1973); *Hayward v. Yost,* 72 Idaho 415, 242 P.2d 971, 977 (1952); *Dymek v. Nyquist,* 128 Ill.App.3d 859, 83 Ill.Dec. 52, 59, 469 N.E.2d 659, 666 (1984); *Madison v. Colby,* 348 N.W.2d 202, 207 (Iowa 1984); *Ferguson v. Burkett,* 454 So.2d 413, 416 (La.Ct.App. 1984); *Norvell v. Cuyahoga County Hosp.,* 11

trend has developed toward the judicial adoption of this cause of action. Several of the jurisdictions that have adopted a filial consortium claim have done so as a matter of statutory construction,[28] and many of the jurisdictions that have declined to adopt the claim have done so recently.[29] Furthermore, our research reveals only one jurisdiction that has expressly recognized the specific right the Bouchers urge this court to adopt: a judicially created right to recover for the loss of an adult child's consortium.[30]

More importantly, Utah law does not support the adoption of a loss of filial consortium claim. While we have not addressed the specific issue presented in this case, we have decided several cases relevant to the Bouchers' claim. The most prominent is *Hackford v. Utah Power & Light Co.*,[31] wherein we reaffirmed case law holding that Utah's Married Woman's Act, Utah Code Ann. § 30–2–4, abolished the claim of spousal consortium.[32] *Hack-*

*ford* is based on statutory construction and is therefore distinguishable from the instant case, but its analysis and result nevertheless undercut the Bouchers' position.

First, allowing recovery for the loss of an adult child's consortium and denying recovery for the loss of a spouse's consortium would lead to anomalous results. In many instances, the marital relationship is closer and more involved than the relationship between parents and their adult children and therefore should be granted greater or equal protection.[33] However, because of our holding in *Hackford*, we cannot recognize a filial consortium claim and extend the same right of recovery to a plaintiff who suffers a loss of consortium because his or her spouse has been tortiously injured. The adoption of the Bouchers' claim, therefore, would invite inequitable applications of the consortium doctrine.

Furthermore, the modern concept of recovering for loss of consortium developed in the area of spousal consortium.[34] Utah,

Ohio App.3d 70, 463 N.E.2d 111, 114–15 (1983); *Harbeson v. Parke-Davis, Inc.*, 98 Wash.2d 460, 656 P.2d 483, 493 (1983); *Korth v. American Family Ins.*, 115 Wis.2d 326, 340 N.W.2d 494, 496 (1983).

**28.** *Hayward*, 242 P.2d at 977; *Ferguson*, 454 So.2d at 416; *Harbeson*, 656 P.2d at 493. Iowa's recognition of the claim of loss of filial consortium is based on a rule of civil procedure. *See Madison*, 348 N.W.2d at 207.

**29.** *Doe "A"*, 637 F.Supp. at 1146; *Toups*, 644 F.Supp. at 477; *Baxter*, 138 Cal.Rptr. at 318, 563 P.2d at 874; *Butler*, 264 So.2d at 816–17; *Siciliano*, 475 A.2d at 21–24; *Wilson*, 668 P.2d at 1112; *Beyer*, 306 N.Y.S.2d at 622.

**30.** *See Howard Frank, M.D., P.C. v. Superior Court of Arizona*, 150 Ariz. 228, 722 P.2d 955, 961 (1986).
   We also point out that Washington, as a matter of statutory construction, has noted that the damages for loss of filial consortium are not limited to the child's minority. *Harbeson*, 656 P.2d at 493. However, language in *Shockley v. Prier*, 66 Wis.2d 394, 225 N.W.2d 495 (1975), suggests that a parent's action for loss of filial consortium is limited to the child's minority. *Id.* at 499–501.

**31.** 740 P.2d 1281 (Utah 1987).

**32.** *Hackford* is a plurality opinion; however, a majority of the court concurred in this holding. *Id.* 740 P.2d at 1286–87 (Zimmerman, J.), 740

P.2d at 1288 (Howe, Assoc. C.J., concurring in the result, joined by Hall, C.J.); *see also Black v. United States*, 263 F.Supp. 470, 476–80 (D.Utah 1967); *Tjas v. Proctor*, 591 P.2d 438, 440 (Utah 1979); *Ellis v. Hathaway*, 493 P.2d 985, 986 (Utah 1972).

**33.** Several jurisdictions that have adopted filial consortium claims have done so in part because they have already recognized a cause of action for spousal consortium and do not see a basis for distinguishing between the marital and parental relationship. *See, e.g., Norvell*, 463 N.E.2d at 114. Other jurisdictions that allow claims for spousal consortium have declined to adopt filial consortium claims, in part because the law traditionally has been more protective of the marital relationship. *See, e.g., Siciliano*, 475 A.2d at 22.

**34.** Consortium claims developed from the common law notion that a husband had an interest in his wife's services and therefore could recover for the loss of those services if she was tortiously injured. As this claim developed, the concept of services a wife owed came to include affection, society, and sexual intercourse. Eventually, the concept of a husband having an interest in his wife's services was abandoned in favor of the concept that both spouses have an interest in the marital relationship. *See Hackford*, 740 P.2d at 1284 (Zimmerman, J.) (citing Holbrook, *The Change in the Meaning of Consortium*, 22 Mich.L.Rev. 1, 2–4 (1923); *Prosser* at 934.

however, has not recognized any consortium claim that allows recovery because a defendant's negligence resulted in the nonfatal injuries of a third person.[35] Nor have we recognized similar negligence claims, such as the *Dillon* approach to the claim of negligent emotional distress, that allow recovery based in part on the relationship between the plaintiff and a third party who suffers nonfatal injuries.[36] Utah, therefore, has no basis in existing case law for the adoption of the Bouchers' claim.

Apart from the problems presented by the fact that Utah does not recognize a cause of action for loss of spousal consortium, much of the reasoning in *Hackford* undercuts the Bouchers' position. In declining to recognize a spousal consortium claim, we relied not only on statutory considerations, but also on several factors relevant to the Bouchers' claim.

Specifically, we noted that consortium claims have the potential for greatly expanding the liability that can flow from one negligent act, and courts that have adopted consortium claims have been unable to develop rational limits on this liability.[37] We also noted the potential adverse impact the recognition of consortium claims may have on the cost and availability of insurance.[38] Finally, given these concerns and the fact that the legislature has previously acted in this area, we concluded that the legislature is the appropriate body to determine if Utah should recognize consortium claims.[39]

As we observed in *Hackford:*

There is nothing inherent in the cause of action [of loss of consortium] as it is now recognized around the country that limits its availability to spouses. It could as easily be extended to all negligent infliction of emotional harm upon children, in-laws, lovers, and close friends. In recent years, courts and commentators have struggled mightily to find limiting principles for claims based on relational interest, but appear to have failed.... The result is profound confusion and rather arbitrary linedrawing.[40]

**35.** *See Hackford,* 740 P.2d at 1286–87 (Zimmerman, J.), at 1287 (Howe, Assoc. C.J., concurring in the result, joined by Hall, C.J.); *Tjas,* 591 P.2d at 440; *Ellis,* 493 P.2d at 986.

**36.** *See Hansen v. Sea Ray Boats,* 830 P.2d 236, 241 (Utah 1992).

We do recognize a claim of alienation of affections, *Norton v. MacFarlane,* 818 P.2d 8, 15 (Utah 1991). However, alienation of affections is an intentional tort committed on the non-alienated spouse by interference with the marital contract, while consortium claims of the type presented in the instant case are negligence actions that are based on a coincidental relationship between the victim of a tort-feasor and a third party. Because of these distinctions, the problems of expansive liability described *infra* are not implicated in alienation of affections cases. Indeed, many courts have found these actions to be distinguishable. *See, e.g., Hackford,* 740 P.2d at 1287 (Howe, Assoc. C.J., concurring in the result, joined by Hall, C.J.); *Black,* 263 F.Supp. at 476–77; *Wilson,* 668 P.2d at 1111; *see also Siciliano,* 475 A.2d at 23 (cause of action for intentional interference with parental custody distinguishable from filial consortium claim).

**37.** *Hackford,* 740 P.2d at 1286 (Zimmerman, J.), at 1289 (Howe, Assoc. C.J., concurring in the result, joined by Hall, C.J) (citing, *inter alia, Borer v. American Airlines,* 19 Cal.3d 441, 138 Cal.Rptr. 302, 310, 563 P.2d 858, 866 (1977); *Butcher v. Superior Court,* 139 Cal.App.3d 58, 71–72, 188 Cal.Rptr. 503, 512 (1983); *Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or. 543, 652 P.2d 318, 331 (1982); Note, *Limiting the Cause of Action for Loss of Consortium,* 66 Cal. L.Rev. 178, 430–46 (1978); *cf. Developments in the Law—The Constitution and the Family,* 93 Harv.L.Rev. 1156, 1270–95 (1980).

**38.** *Hackford,* 740 P.2d at 1288–89 (Howe, Assoc. C.J. concurring, joined by Hall, C.J.). Other jurisdictions have cited unforeseen effects on insurance as a reason for declining to adopt a filial consortium claim. *See, e.g., Siciliano,* 475 A.2d at 22; *Koskela v. Martin,* 91 Ill.App.3d 568, 47 Ill.Dec. 32, 35, 414 N.E.2d 1148, 1151 (1980).

**39.** *Hackford,* 740 P.2d at 1289 (Howe, Assoc. C.J., concurring in the result, joined by Hall, C.J.), at 1287 (Zimmerman, J.). Jurisdictions that have declined to recognize filial consortium claims often comment that the recognition of such claims should be left to the legislature, *see, e.g., Curtis v. County of Cook,* 109 Ill.App.3d 400, 65 Ill.Dec. 87, 93, 440 N.E.2d 942, 948 (1982), *affirmed in part,* 98 Ill.2d 158, 74 Ill.Dec. 614, 456 N.E.2d 116 (1983), while jurisdictions that have judicially adopted the claim view the adoption of consortium claims within the responsibility of judicial authority, *see, e.g., Reben,* 705 P.2d at 1362.

**40.** *Hackford,* 740 P.2d at 1286 (Zimmerman, J.), *see also id.* at 1289 (Howe, Assoc. C.J., concurring in the result, joined by Hall, C.J.).

....

... [I]f the right to consortium is to be given in this state, the proper approach should be for the legislature to do it.... In so doing, the legislature can give that right to both husband and wife. It can also consider how far the right should be extended.... Since most torts are compensated for, if at all, by insurance purchased by the tort-feasor, the cost and reasonable availability of insurance are inexorably related to the enlargement of the circle encompassing those persons entitled to recover damages. However admirable in the name of justice it is to attempt to compensate everyone who suffers at the hand of the tort-feasor, boundaries around liability must be drawn.... The legislature is peculiarly equipped to draw the lines. We are not.[41]

Therefore, though we have not previously dealt with a filial consortium claim, our case law nevertheless undermines the Bouchers' assertion that they may recover for the loss of their son's society and affection.

Furthermore, we do not find the Bouchers' arguments persuasive. They claim that because they have reorganized their lives in order to undertake the care of their son, they should be able to recover personally from the parties responsible for their son's condition. However, the expense incurred for Daniel Boucher's nursing care is recoverable as part of the damages in Daniel Bouchers' own suit. Even the jurisdictions that allow recovery for loss of consortium would not allow the Bouchers to recover for the nursing care they have provided, because to do so would be to allow a double recovery.[42]

The Bouchers also contend that because Utah allows recovery for the loss of society and affection in wrongful death cases, it is logical to extend this theory of damages to cases involving nonfatal injuries.[43]

However, we view wrongful death cases as distinguishable from consortium cases. In wrongful death cases, the party that suffers the actual physical injury has no cause of action and the legislature has prescribed the parties who have a right to recover for the loss of the deceased's society and affection.[44] Therefore, there is no danger of expansive liability and no need for the judiciary to attempt to fashion rational limits on relational interests. Indeed, we rejected a similar argument in *Hackford.*[45]

The Bouchers also contend that Utah Code Ann. §§ 78–11–6 to –7 provide for filial consortium claims in cases involving minor children and therefore we should judicially expand this legislative right to cases involving adult children.[46] However, we know of no case which has interpreted these sections as providing for recovery for the loss of consortium in cases of nonfatal injuries. Nor do we need to address the Bouchers' interpretation of these sections in the present case. Even if we were to

---

**41.** *Id.* 740 P.2d at 1289 (Howe, Assoc. C.J., concurring in the result, joined by Hall, C.J.); *see also id.* at 1287 (Zimmerman, J.).

**42.** *See Rodriguez v. Bethlehem Steel Corp.,* 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974). The *Rodriguez* court held that a wife who gives up her job to nurse her husband cannot recover for her lost wages and the value of her services as part of the damages in her consortium claim because the expense of nursing care is part of her husband's claim. *Id.* 115 Cal.Rptr. at 782–83, 525 P.2d at 686–87.

**43.** *See* Utah Const. art. XVI, § 5; Utah Code Ann. §§ 78–11–6 to –7; *Jones v. Carvell,* 641 P.2d 105, 108 (Utah 1982).

**44.** Utah Code Ann. §§ 78–11–6 to –7; *Kelson v. Salt Lake County,* 784 P.2d 1152, 1156–57 (Utah 1989); *see also Morrison v. Perry,* 140 P.2d 772, 781 (Utah 1943).

**45.** *Hackford,* 740 P.2d at 1287 (Howe, Assoc. C.J., concurring in the result, joined by Hall, C.J.), at 1286 n. 3 (Zimmerman, J.).

**46.** Sections 78–11–6 to –7 provide in pertinent part:

> Except as provided in Title 35, Chapter 1, a parent or guardian may maintain an action for the death *or injury* of a minor child when such *injury* or death is caused by the wrongful act or neglect of another....
>
> ....
>
> In every action under this and the next preceding section [Section 78–11–6] such damages may be given as under all circumstances of the case may be just.

adopt the Bouchers' statutory interpretation, it would not follow that we should judicially expand the right of recovery to include the loss of an adult child's consortium.

We decline to adopt a cause of action that allows the parents of a tortiously injured adult child to recover for the loss of consortium. The trial court, therefore, did not err in dismissing the Bouchers' claims of negligent infliction of emotional distress and loss of filial consortium.

Affirmed.

HOWE, Associate C.J., and ZIMMERMAN, J., and LEONARD H. RUSSON, Court of Appeals Judge, concur.

DURHAM, J., having disqualified herself, does not participate herein; RUSSON, Court of Appeals Judge, sat.

STEWART, Justice (concurring and dissenting):

I concur in part I of the majority opinion but dissent from part II.

In part II, the majority holds that Utah does not recognize a parent's cause of action for the loss of a permanently disabled adult child's consortium resulting from a tortiously inflicted injury. The majority's holding is technically a narrow one because it applies only to the loss of an *adult* child's consortium. To the extent that dicta in the majority opinion implies a broader holding that would apply to unemancipated children and to minors, I make the following observations.

The majority relies heavily upon Justice Zimmerman's opinion in *Hackford v. Utah Power & Light Co.*, 740 P.2d 1281 (Utah 1987), as authority for its holding. That opinion, however, was not concurred in by any other justice. Justice Howe concurred in the result, and Chief Justice Hall concurred in Justice Howe's opinion. Justice Durham dissented, and I concurred in her dissent. The majority does not make clear that the lead opinion in *Hackford* reflected the views of only one member of the Court. Moreover, the issue in *Hackford* was essentially one of statutory construction—specifically, whether the Utah Married

Woman's Act precluded an action for loss of marital consortium. The statute in that case has no bearing whatsoever upon the issues here.

The majority also incorrectly asserts that Utah has not recognized any consortium claim. We expressly reaffirmed legal protection for marital consortium in *Norton v. MacFarlane*, 818 P.2d 8 (Utah 1991). In addition, a parent's cause of action for the loss of the companionship, society, and affection (i.e., consortium) of a child as a result of a wrongful death has been deemed so important in Utah that it is protected by our Constitution and by statute. *See* Utah Const. art. XVI, § 5; Utah Code Ann. § 78-11-6; *see, e.g., Jones v. Carvell*, 641 P.2d 105, 108 (Utah 1982). Indeed, that cause of action provides a remedy for the loss of filial consortium, whether negligently or intentionally inflicted. Oddly, the majority makes only passing reference to these provisions and blithely ignores the fundamental nature of a constitutional policy recognized since statehood. In short, the majority treats that policy as if it were irrelevant to the issue at hand.

The Court asserts the hoary law school cliche that to recognize a cause of action for loss of filial consortium would "open the floodgates of litigation." However, extending the constitutional and statutory policies in wrongful death cases to a parent's loss of a child's consortium resulting from a permanent loss of the child's physical capacities simply will not open any floodgate. I see no reason to refuse to extend the policies that protect filial consortium in wrongful death actions to cases where a child survives an injury but is so badly injured that the basis for normal filial companionship and society between parent and child is destroyed.

That damages cannot be precisely quantified is not a valid objection to the adoption of a cause of action for loss of filial consortium. The law protects all kinds of human values that cannot be measured by a slide rule, such as marital and filial consortium in wrongful death actions, reputation, privacy, and emotional security from outra-

**1188**

geous conduct. Moreover, medical science and psychology have clearly established that a person's physical health and emotional health are often closely related and that emotional and psychological trauma may have a cause and effect relationship on physical health. The loss of a child's consortium may well affect the physical well-being of parents.

Certainly, the law need not recognize causes of action for ephemeral injuries or for every form of personal distress that arises from living in a necessarily rough and tumble world. But that is not what this case is about. There is every reason to believe that the loss in this case is both permanent and profound.

I would remand this case to the trial court for a determination of whether David Boucher was an unemancipated child. If so, I believe the parents should have a cause of action.